1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON

DAVID GARRET; and
TLJ, LLC,

                Plaintiffs,

vs.

MATERIA GROUP LLC; MATERIA
GROUP INC.; DEREK MULLER;
ANTHONY BERGIN; WILLIAM
POWELL; JOHN MOTTA; and JOSEPH
MOTTA,

                Defendants.

Case No.: _____

**COMPLAINT FOR:**

**(I) COPYRIGHT
INFRINGEMENT;(II) BREACH OF
DUTY;(III) BREACH OF
TRUST/LOYALTY;(IV) BREACH OF
WRITTEN AGREEMENT;(V)
CONVERSION;(VI) TRESPASS TO
CHATTELS;(VII) FRAUD;(VIII)
FRAUDULENT CONVEYANCE;(IX)
PROFESSIONAL NEGLIGENCE and
(X) DECLARATORY RELIEF**

## **INTRODUCTION**

1.     Plaintiffs David Garret ("Garret") and TLJ, LLC ("TLJ") complain against
Defendants Materia Group, LLC ("Materia LLC") and Materia Group, Inc. ("Materia INC.")
(collectively, "Materia"), Derek Muller ("Muller"), Anthony Bergin ("Bergin"), William Powell
("Powell"), John Motta, ("John Motta"), and Joseph Motta ("Joe Motta"), for copyright

                           EDMONDSON IP L:AW

infringement, breach of duty, breach of trust, breach of written agreement, conversion, trespass to chattels, fraud, fraudulent conveyance, professional negligence and declaratory relief. Plaintiffs seek the remedy of damages and declaratory relief as to the ownership of trademarks in this case.

2.      Bergin gained the trust of the creative talent of Garret, who is the creator of the "LumberUnion" clothing brand.  Bergin and Garret then formed TLJ to bring this clothing brand to market.  Bergin then had problems working with Garret.  Rather than work out these differences, Bergin, in cooperation with Muller, Powell, John Motta, and Joe Motta, then used a sham loan to raid and transfer the brand assets from TLJ to Materia using the Motta's as a straw man.

## THE PARTIES

3.      Garret is an innovator in the clothing industry, having previously designed for well-known brands in Los Angeles.  Garret co-founded TLJ and designed the artwork for the clothing initially sold by TLJ.  Garret is a resident of Kings County.

4.      TLJ is a limited liability company that was formed to promote and market "LumberUnion".  TLJ is located in Kings County.

5.      Defendant Bergin co-founded TLJ with Garret.  On good faith and belief, Bergin is resident of the State of Washington and resides in the Seattle area.

6.      Attorney Powell is and was an attorney licensed by the Washington State Bar, and represented both TLJ and the Materia entities.

7.      Defendant Materia Group, LLC was at all material times a Washington limited liability company formed by Bergin in order to wrongfully convert TLJ's assets.

8.      Defendant Materia Group, Inc. is the successor-in-interest entity to Materia Group, LLC initially formed as a Washington corporation that was later converted to a Delaware corporation and registered to sell clothing under the LumberUnion brand as a foreign corporation in Washington.

9.      On good faith and belief, Defendant Muller is a resident of the State of Washington and resides in the Seattle area.

10.      On good faith and belief, Defendants John and Joseph Motta are residents of the State of Washington and reside in the Seattle area.

## JURISDICTION AND VENUE

11.      This action arises under federal copyright laws, 17 U.S.C. §§ 101, *et.seq.*, and thus this Court has jurisdiction over the subject matter pursuant to 28 U.S.C. § 1331. This Court has supplemental jurisdiction over related state law claims pursuant to 28 U.S.C. § 1367(a) because these claims form part of the same case or controversy.

12.      This Court has personal jurisdiction over the Defendants as they reside in this district and market, distribute, and/or sell infringing products throughout the United States, including to customers within this judicial district.

13.      Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Materia and Bergin conduct, transact, and/or solicit business in this judicial district, such that their contacts with this district subject them to personal jurisdiction with respect to this action and, upon information and belief, a substantial part of the events giving rise to Plaintiffs' claims, specifically the infringement of Garret's copyright, has occurred, and continues to occur in this judicial district, causing damage to Garret in this judicial district.

14.      Venue is proper in this Court pursuant to 28 U.S.C. 1391(b) because a substantial part of the events giving rise to the claims occurred in the Western District of Washington.

15.      Pursuant to Local Civil Rule 3(e), intra-district assignment to the Seattle Division is proper because the claims arose in this Division, where (a) the injuries giving rise to suit occurred, and (b) Defendants directed their unlawful conduct.

EDMONDSON IP L:AW

**FACTUAL BACKGROUND**

16.     Garret grew up in Seattle and then moved to Los Angeles working in the clothing industry.

17.     Garret created branded clothing lines in Los Angeles for nationally recognized brands.  When he moved back to Seattle, he decided to create a line of clothing based on the local and iconic "lumberjack" theme.  Using this theme, he created a series of concepts.

18.     While in Seattle, Garret met Bergin.  Garret described and showed Bergin ideas for his lumberjack clothing line.  Bergin then proposed that Garret and Bergin form a business venture to exploit Garret's creative designs.

19.     TLJ was formed on or about April 30, 2015.  The LLC's operating agreement is attached as Exhibit "1".

Pre-Launch Investments

20.     As with most business ventures, TLJ was short on startup capital.  Bergin solicited Garret's father for an investment.  Garret's father agreed to invest $42,000.00.  This investment was approved by both Garret and Bergin.  Bergin used this money for web development, social media marketing, solicitation of other investors, legal fees and modeling expenses.

The Brand and Brand Protection by Trademark Counsel, William Powell

21.     At this time, TLJ key assets were the LumberUnion Brands.  William Powell was retained to file trademark registrations "LUMBERUNION" (Reg. # 5551185) and "LUMBERJOCK" (Reg. # 5486934).

22.     As Powell was engaged as counsel for TLJ, he had a professional and fiduciary duty to TLJ in connection with these brands and all intellectual property assets.

EDMONDSON IP L:AW

The Working Relationship between Garret and Bergin Declines

23.    Bergin began using TLJ funds for activities unrelated to the operation and promotion of TLJ.  Garret questioned the proper use of these funds. As a result, the working relationship between Garret and Bergin soon soured.

Bergin Squeezes out Garret with Sham Loans from Joseph and John Motta

24.    Bergin also solicited a loan from John Motta.  The Note securing this loan of $5,000 was to be repaid by January 22, 2016, and pledged all of TLJ's trademarks, intellectual property and designs in the event of default.  This loan was entered into by Bergin on or about November 22, 2015, but was never approved by Garret.  Attached hereto as Exhibit "2" is a copy of this Note.

25.    Bergin also had entered into another loan agreement with Joseph Motta (John Motta's father) for $20,000 due no later than November 22, 2016.  This Note also pledged all of TLJ's trademarks, intellectual property and designs in the event of default, plus gave an option to convert debt into shares of TLJ's Investor Stock Option Plan that was to be created before the loan's maturity date.  It also required TLJ to create an advisory board that Joseph Motta would join to provide advice to TLJ on operational functions. Bergin never acquired Garret's authorization or approval of this $20,000 loan, the stock plan or the advisory board.  Attached hereto as Exhibit "3" is a copy of this Note.

26.    At this time, Garret was unaware that Bergin had pledged all of TLJ's intellectual property, designs and trademarks on the two loans with John and Joseph Motta until after execution of the Notes.

Product Launch

27.    The parties launched TLJ's website on November 23, 2015.

28.    Bergin continued to control TLJ's limited operations without keeping Garret apprised of the day-to-day details.  Bergin made no effort to have TLJ repay the $42,000 loan

from Garret's father by the January 1, 2016 due date, or the $5,000 debt owed to John Motta by January 22, 2016.

29.     Efforts to negotiate a more comprehensive Operating Agreement to address Bergin's unsanctioned activities on behalf of TLJ were not successful.  By mid-July 2016, Bergin demanded Garret either split up TLJ's debt and close up operations, or sign over the company to Bergin.

30.     Bergin made no effort to withdraw from or terminate the partnership in accordance with the operating agreement.  However, unbeknownst to Garret, Bergin had utilized TLJ's attorneys to assist him in the formation of a new company, Materia Group LLC, on or about July 26, 2016.

Garret Discovers the Misappropriation of the Brands

31.     On or about August 9, 2016, Garret discovered that Bergin was using a new logo that was a slight variation of Garret's logo on Facebook.

32.     These slight variations of the logo were produced by Muller at the direction of Bergin for the benefit of Material Group, LLC.

33.     On or about August 17, 2016, Materia Group LLC began using "LumberUnion by © 2016 Materia Group LLC", and selling TLJ merchandise.

34.     On August 25, 2016, Garret's personal attorney demanded that Materia cease and desist from utilizing TLJ's intellectual property, and requested the attorney immediately withdraw as counsel for TLJ, Materia and Bergin due to the obvious conflict of interest.

35.     On or about September 7, 2016, Powell's supervising attorney admits they represent both TLJ and Materia, but denies that TLJ owned any intellectual property or trademarks or that there was a conflict of interest in representing both companies.  The attorney admits that Materia owns the trademarks, design and intellectual property at issue by assignment.  Attached hereto as Exhibit "4" is a copy of the letter to Garret's personal attorney.

<u>Materia Group files Assignments at the USPTO in 2018</u>

36.     Garret was unaware that Bergin had assigned all of the intellectual property of TLJ to John Motta, who then assigned all such rights to Materia, until September 7, 2016, when his personal attorney received a letter from attorney Casey asserting the fact of the assignments.

37.     Defendants' attorney did not file copies of the assignments with the Trademarks office until approximately June 20, 2018.

## CAUSES OF ACTION

### COUNT I
### Direct Copyright Infringement, Contributory Copyright Infringement, and Vicarious Copyright Infringement
### (against all Defendants)

38.     Plaintiffs reallege and incorporate by reference the allegations set forth above.

39.     Garret is the author of certain original works of authorship ("Works").  The Works are evidenced by the following certificates of registration that are attached hereto as Exhibit "5":

   a.   Certificate #1:  Registration No. TX 8-704-634;

   b.   Certificate #2:  Registration No. VA 2-157-360; and

   c.   Certificate #3:  Registration No. VA 2-153-864.

40.     Garret was not an employee of TLJ and there is no written agreement assigning the rights of the copyrighted works to TLJ.

41.     Materia defendants have caused and continue to cause these Works and/or images derived from those Works to be used on their website, on clothing, and on other works.  Goods with the Works or derivative works have been sold to the general public directly at retail shops and/or via the internet.

42.     The Materia defendants do not have a license, nor have they sought a license, for the Works to be used on their clothing and on other works.

43.     Bergin directs and controls the Materia defendants and has substantial decision making authority over these organizations.  Bergin directed Muller and Materia to infringe the

7 – COMPLAINT

EDMONDSON IP L:AW

Works by creating a slight variation of the Works, then entering into contracts to have the marks reproduced on clothing brands, and on Materia's website.

44.     Joseph Motta, John Motta, and Muller are vicariously liable for Copyright Infringement of the Works.  The Motta defendants knew that the loans were not created for the purpose of injecting equity into TLJ, but rather a sham to transfer assets from TLJ to Materia, LLC.  Materia then took these other assets (the trademarks, and other tangible property).  Joseph and John Motta knew that the clothing would bear the infringed Works.  Muller made a slight variation of the Works in order for Materia to wrongfully use on the clothing line.

45.     Powell is also vicariously liable for Copyright infringement.  Powell had a professional and fiduciary duty to TLJ.  Powell, as a professional IP attorney, knew that TLJ required complete ownership of the Works and/or a license to use the Works.  Powell then represented Materia providing advice on and billing Materia in connection with these intellectual property assets.  Powell directly benefitted from the sale of the infringing products.

## COUNT II
### Breach of Duty
### (against Defendant Bergin only)

46.     Plaintiffs reallege and incorporate by reference the allegations set forth above.

47.     Bergin owed Garret a duty of care when the parties entered into an agreement to work together to create, execute and manage an apparel and lifestyle clothing line.  The operating agreement between the parties set forth the scope of the parties' rights and duties to one another, including that Garret was a 54% owner and Bergin was a 46% owner of TLJ, that both partners had equal rights to manage and control TLJ, subject to the restriction that neither partner could act or contract to any liability exceeding $5,000 without the prior written consent of each partner, that neither partner could directly or indirectly engage in a business which was competitive with TLJ's business (see, Exhibit "1" identified above).

48.     This fiduciary relationship continued to exist at all times relevant herein until their partnership was properly terminated or upon the expiration of ten (10) years, whichever came first.

49.     Bergin failed to comply with his fiduciary duties owed to Garret by engaging in injurious conduct and practices, abusing his limited power in TLJ, and ignoring Garret's rights in TLJ.  Specifically, Bergin (1) fraudulently induced Garret into a business with false promises that Garret would be actively involved therein, (2) failed to keep Garret reasonably informed of his activities on behalf of TLJ, (3) failed to give proper notice of his withdrawal from the parties' partnership, and (4) the formation and operation of a competitor company in violation of the operating agreement.

50.     Garret has been damaged by Bergin's wrongful conduct and breach of fiduciary duties to Garret, including but not limited to an impairment of Garret's fundamental ownership and management rights in TLJ.

51.     Garret's damages were proximately caused by Bergin, including but not limited to lost profits and lost business opportunities in the promotion and sale of the apparel line that Garret created.

### COUNT III
### Breach of Trust/Loyalty
### (against Defendant Bergin only)

52.     Plaintiffs reallege and incorporate by reference the allegations set forth above.

53.     Beginning when TLJ was formed on April 30, 2015, Bergin owed a fiduciary duty of trust and loyalty to act in the best interest of TLJ to create, manage and operate an apparel and lifestyle clothing line business with Garret.

54.     This fiduciary relationship continued to exist at all times relevant herein to the extent set forth in the operating agreement (see, Exhibit "1").

55.     Bergin failed to comply with his fiduciary duties owed to TLJ, and Garret as the majority owner of TLJ, by engaging in injurious conduct and practices, abusing his limited power in TLJ, ignoring Garret's rights in TLJ, and by ignoring his duty of loyalty that prohibited him from engaging in self-dealing activities and transactions, all of which were detrimental to TLJ. Specifically, Bergin (1) engaged in a scheme to secretly obtain financing from John and Joseph Motta that would take priority over a predecessor loan and pledged all of TLJ's assets, (2) failed to keep the majority owner of TLJ reasonably informed of the affairs of TLJ and Bergin's

EDMONDSON IP L:AW

activities therein, (3) failed to properly manage the assets of TLJ, (4) fraudulently conveyed and engaged in self-dealing activities related to the intellectual property rights of the LumberUnion Mark without consent, and (5) the formation and operation of a competitor company in violation of the operating agreement.

56.   Plaintiffs have been damaged by Bergin's wrongful conduct and breach of fiduciary duties to TLJ, including but not limited to the draining of all the assets of TLJ with fraudulent loans, unnecessary business and personal expenses, mismanagement and the failure to protect TLJ's assets and interests over his own interests.

57.   Plaintiffs' damages were proximately caused by Bergin, including but not limited to lost profits and lost business opportunities and income that TLJ was entitled to.

## COUNT IV
## Breach of Written Agreement
### (against Defendant Bergin only)

58.   Plaintiffs reallege and incorporate by reference the allegations set forth above.

59.   Bergin owed Garret a duty of care pursuant to the written operating agreement they entered into on May 19, 2015, to work together to create, execute and manage an apparel and lifestyle clothing line.  The agreement required Bergin to obtain Garret's prior written consent before entering into any liability exceeding $5,000 on behalf of TLJ, to give sixty days prior written notice of his intent to terminate the parties' agreement and sell his interest in the company, and to restrain from directly or indirectly engaging in a competing business (see, Exhibit "1" identified above).

60.   Bergin breached his duties under the written agreement by failing to obtain Garret's prior written consent for the $20,000 loan with Joseph Motta, by failing to give the proper notice of his intent to terminate the parties' written agreement and sell his interest to Garret, and by creating a new business that operated and engaged as a direct competitor of the products sold by TLJ.

61.   By breaching his fiduciary duties owed to Garret under the written agreement, Bergin proximately caused damages to Garret, including but not limited to lost profits, lost

business opportunities and income that Garret was entitled to as part of their business venture. Garret also has suffered, or will suffer, damages by repaying the debt acquired by TLJ from Ron Butler as Bergin has not paid or committed to repaying Ron Butler.

**COUNT V**
**Conversion**
**(against Defendants Bergin and John Motta only)**

62.     Plaintiffs reallege and incorporate by reference the allegations set forth above.

63.     Plaintiffs owned and had the right to possess the creative assets that were designed by Garret when TLJ was formed in 2015.

64.     Defendant Bergin intentionally interfered with Plaintiffs' personal property, exercising dominion and control over their creative assets without the consent or authorization of Garret and TLJ.

65.     Bergin's interference deprived Plaintiffs of the possession and use of the creative assets when Bergin pledged those assets in the loan with John Motta with the intention of allowing the loan to go into default.

66.     With the help and assistance of Bergin, Defendant John Motta intentionally interfered with Plaintiffs' property, exercising dominion and control over the pledged assets that he wrongfully acquired and then assigned to Materia without undertaking the foreclosure process and notice to Plaintiffs.

67.     Plaintiffs did not consent or authorize the taking of the creative assets in question.

68.     Bergin's and John Motta's interference caused damages to Plaintiffs just when TLJ's business was increasing in revenues and popularity.  Having stripped the Plaintiffs from the creative assets of TLJ's trademark clothing lines, Plaintiffs can no longer realize the profits of Garret's hard work and designs of clothing lines he had envisioned and created.  Plaintiffs are entitled to the value of the converted property as of the time they were taken.

**COUNT VI**
**Trespass to Chattels**
**(against Defendants Bergin and John Motta only)**

EDMONDSON IP L:AW

69.   Plaintiffs reallege and incorporate by reference the allegations set forth above.

70.   Plaintiffs lawfully possessed the creative assets designed by Garret for the collective benefit of TLJ.  TLJ had applied for trademark protection of the creative assets before they were taken by Bergin and John Motta, which constituted notice of the legally protected interest therein.

71.   Defendant Bergin intentionally interfered with Plaintiffs' creative assets by barring Garret and TLJ access to the creative assets by way of loans that pledged those assets to John and Joseph Motta without the consent or knowledge of Garret.

72.   Defendant John Motta intentionally interfered with Plaintiffs' creative assets by fraudulently taking the creative assets of Plaintiffs and assigning them to Materia without first having undertaken the foreclosure process of the pledged assets under the loan with TLJ.

73.   The creative assets of TLJ and Garret were wrongfully taken thereby depriving Plaintiffs use thereof for a substantial period of time.

74.   Plaintiffs did not consent to the taking of their creative assets.

75.   Plaintiffs were actually damaged by the trespass to chattels because Materia is now selling Plaintiffs' creative assets without any compensation to Plaintiffs.

## COUNT VII
## Fraud
### (against Defendant Bergin only)

76.   Plaintiffs reallege and incorporate by reference the allegations set forth above.

77.   Bergin represented to Garret that Garret would have decision making authority in all decisions of the business in order to induce Garret to enter into business with him.  Bergin represented to Garret that Garret would be an equal partner in the operation of the business, subject to the caveat that neither partner could obtain a loan over $5,000 without the express consent or authorization of the other partner in the business.

78.   These representations were material to Garret entering into a business with Bergin. But for these assurances by Bergin, Garret would not have entered into a business venture with Bergin.

EDMONDSON IP L:AW

79.    Bergin's representations to Garret were false and misleading, as he had no intention of allowing Garret to have decision making power or control over the operation of the business, and Bergin had no intention of paying the loans he secured on behalf of TLJ until he stripped Garret out of the business.  Bergin knew his representations to Garret were false and misleading, and that Garret was relying on such assurances as a condition of forming TLJ.

80.    Garret had the right to rely upon, and did in fact rely upon, the truth of Bergin's representations and assurances, but Garret was ignorant of the falsity of Bergin's representations.

81.    As a result of Bergin's false and misleading representations, Garret was damaged, including but not limited to the loss of the profits of the parties' business, TLJ, and the outstanding liabilities of TLJ.

## COUNT VIII
## Fraudulent Conveyance
### (against Defendants Materia, Bergin, Powell, John and Joseph Motta)

82.    Plaintiffs reallege and incorporate by reference the allegations set forth above.

83.    Bergin held a 46% ownership interest in TLJ, and had equal management and operations authority as his partner Garret, subject to some restrictions.  Bergin undertook efforts to obtain financing from investors without conferring with Garret or providing him with any notice of his activities and the acquisition of debts on behalf of TLJ.

84.    Bergin entered into two loan transactions on or about November 22, 2015, one with John Motta in the sum of $5,000, and another loan with Joseph Motta in the sum of $20,000, without the knowledge or consent of his business partner, Garret.  These loans pledged all of the assets of TLJ in the event of a default, i.e., if the $5,000 plus interest was not paid within 60 days, by January 22, 2016 and/or if the $20,000 plus interest was not paid within one year, by November 22, 2016. (See, Exhibits "2" and "3" identified above.)

85.    Bergin solicited these two loans from John and Joseph Motta with the actual intent to defraud the first investor of TLJ, Ron Butler, who was owed $42,000 plus interest, on a loan acquired on September 16, 2015.

86.    Bergin acquired the loan with John Motta with the intent to allow the $5,000 loan to go into default so that all of TLJ's assets would be subject to foreclosure if the loan was not

EDMONDSON IP L:AW

repaid in 60 days.  In addition, Bergin acquired the loan with Joseph Motta with the intent to allow the $20,000 loan to go into default, again risking all of TLJ's assets, in the event the $5,000 loan was repaid.

87.     The loans to TLJ did not constitute a reasonable equivalent value of the assets pledged and received by John Motta or Materia.

88.     Rather than John Motta foreclosing on the $5,000 promissory note and without any notice to Garret, Bergin wrongfully assigned all rights to trademarks, designs and intellectual property owned by TLJ to John Motta on or about September 10, 2016, with a nunc pro tunc assignment dating back to January 22, 2016.  Attached hereto as Exhibit "6" are copies of the assignment documents at issue.

89.     John Motta then executed an assignment of all the rights to trademarks, designs and intellectual property he obtained from TLJ to Materia Group LLC on or about September 10, 2016, again without any notice to Garret. (See, Exhibit "6" identified above.)

90.     On information and belief, Materia Group LLC did not pay the reasonable equivalent value for the rights and assets wrongfully obtained from TLJ through John Motta and Bergin.

91.     By way of a conversion of its business entity, Materia Group Inc. now owns the assets wrongfully obtained from TLJ through John Motta via the assignments alleged above.

92.     Bergin was the sole owner of Materia Group LLC when it was formed on or about July 26, 2016.

93.     Garret had no knowledge of Bergin's fraudulent transfers of TLJ's assets until Garret's attorney received a letter dated September 9, 2016, from attorney Casey at Powell's firm.

94.     Bergin concealed from Garret that TLJ's assets had been transferred to Materia by the John Motta assignments.

95.     Plaintiffs have been defrauded by the named defendants and are entitled to the voiding of the assignments and transfers of ownership in the intellectual property, designs and trademarks previously owned by TLJ.

EDMONDSON IP L:AW

**COUNT IX**
**Professional Negligence**
**(against Defendant Powell only)**

96.     Plaintiffs reallege and incorporate by reference the allegations set forth above.

97.     Powell was TLJ's attorney at all material times herein, having been retained in September 2015 to protect TLJ's interest in the company's trademark applications, brand protection, and clothing design protection for the LumberUnion clothing brand.  As the company's attorney, Powell owed a fiduciary duty to TLJ at all materials times herein.  Attached hereto as Exhibit "7" is a copy of the retainer agreement setting forth the obligations between TLJ and Powell's firm.

98.     Powell failed to comply with his fiduciary duties to TLJ by secretly working with Bergin to enter into loans for TLJ that violated the operating agreement, by failing to register the LumberUnion trademark application or otherwise protect the LumberUnion Mark and clothing brand, and by assisting the Defendants in fraudulently and wrongfully transferring TLJ's assets to Materia.  Powell knew that Garret was the majority holder in TLJ, but failed to include Garret in communications related to the operational details on the loans acquired on behalf of TLJ and on the trademark application status.  Powell did not advise TLJ and Garret as the majority holder of TLJ as to the risks associated with the loans from John Motta and Joseph Motta, including the ramifications of pledging the entirety of TLJ's intellectual property rights and assets held at the time the loans were made.  Powell also failed to advise TLJ and Garret as the majority holder of TLJ as to the status of the trademark application that was started on behalf of TLJ.

99.     In addition, Powell breached his fiduciary duty to TLJ by assisting in the formation of, and by representing, Materia Group LLC and Materia Group, Inc., who fraudulently and/or wrongfully obtained TLJ's assets.  By working with Bergin to set up Materia Group LLC, Powell violated his fiduciary duty to TLJ by failing to obtain the necessary informed written consent of TLJ to represent a competing company and client.  Attached hereto as Exhibit "8" is a copy of the retainer agreement setting forth the obligations between Materia Group LLC and Powell's firm. There existed a direct conflict of interest in Powell representing both TLJ and Materia because

EDMONDSON IP L:AW

Materia fraudulently and/or wrongfully obtained TLJ's assets through Bergin, a member of both entities.

100.    TLJ was damaged by Powell's breach of fiduciary duty in that the assets of TLJ were fraudulently and/or wrongfully transferred to Materia, causing TLJ to lose significant revenues from the sale of the LumberUnion clothing brand.  In addition, TLJ was damaged by Powell failing to prosecute and complete the trademark application on behalf of TLJ, which in turn allowed Materia to register and obtain the rights to the LumberUnion Mark without the consent or knowledge of TLJ or Garret as the majority owner of TLJ.

101.    The violation of Powell's fiduciary duty to TLJ was a proximate cause of TLJ's damages.  If Powell had met his fiduciary duty to TLJ, TLJ would now have the rights to the LumberUnion Mark and be able to sell the LumberUnion clothing brand today.

102.    Plaintiffs suffered damages as a direct result of Powell's breach of duties in an amount to be proven at trial.

**COUNT IX**
**Declaratory Relief re Trademark Ownership**
**(against Defendants Materia and John Motta)**

103.    Plaintiffs reallege and incorporate by reference the allegations set forth above.

104.    Materia and John Motta filed with the USPTO documents the purport to transfer the trademark assets, e.g. the Marks, from TLJ to John Motta, then from John Motta to Materia Group LLC.  Attached hereto as Exhibit "9" are copies of the assignments and the corrective filings that attempt to relate back to the date of default in January 2016.

105.    A case and controversy has arisen regarding the transfer of these assets.  Namely the transfer from TLJ to John Motta is *void ab initio* as a naked assignment in that none of the goodwill was assigned to John Motta in connection with the transfer of these marks.  Further these assignments were procured by fraud as they were not done with the consent of TLJ.

106.    TLJ requests a declaration of rights in regard to this naked assignment and for entry of an order voiding these assignments.

EDMONDSON IP L:AW

## **PRAYER FOR RELIEF**

WHEREFORE, TLJ and Garret pray for:

1) Entry of a judgment that Defendants have has infringed: directly, contributorily, and/or vicariously, the Works for infringement under17 U.S.C. § 101, and request that:

   a. Actual Damages, Injunctive Relief, Costs and Attorney Fees;

2) Entry of a judgment that Defendants have converted the assets or materially participated in the conversion of the assets of TLJ and request that:

   a. Restitution of profits obtained for the conveyance of the intangible rights associated with the LumberUnion Brands;

   b. Assignment of any remaining tangible goods from Materia to TLJ;

   c. Disgorgement of any revenue obtained from the use of the intangible goods by Materia;

3) Entry of a judgment that Bergin breached his fiduciary duty and trust to TLJ in facilitating the conversion of the brands and brand assets and request that:

   a. Actual damages according to proof;

4) Entry of judgment that Bergin breached his contract with Garrett and requests damages according to proof;

5) Entry of a judgment that Powell was negligent in his advice to TLJ regarding the purported assignment of brands and brand assets from TLJ to Materia, and in failing to obtain prior written consent of TLJ to represent a direct competitor, Materia;

6) Entry of an order voiding the transfer of all brands and brand assets from TLJ to Materia; and

7) Such other relief as this Court deems just and proper.

July 20, 2019

By:/s/ J. Curtis Edmondson

J. Curtis Edmondson
SBN 47395
Attorney for Plaintiff

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **<u>DEMAND FOR JURY TRIAL</u>**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, TLJ and Garret respectfully demand trial by jury of any issues so triable by right.

July 20, 2019

By:/s/ J. Curtis Edmondson
J. Curtis Edmondson
SBN 47395
Attorney for Plaintiff

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT "1"

# Partnership Agreement



THIS PARTNERSHIP AGREEMENT is made this 19TH day of MAY, 2015, by and between the following individuals:

DAVID GARRET          Address: 23720 NE 127TH STREET
                      City/State/ZIP: REDMOND WA 98053

ANTHONY BERGIN        Address:1136 31ST AVE S
                      City/State/ZIP:SEATTLE WA 98144

1. <u>Nature of Business</u>.  The partners listed above hereby agree that they shall be considered partners in business for the following purpose:
To successfully create, execute and manage an Apparel and lifestyle brand.

2. <u>Name.</u>  The partnership shall be conducted under the name of TLJ CORP. LLC and shall maintain offices at 23720 NE 127TH STREET
REDMOND WA 98053

3. <u>Day-To-Day Operation</u>.  The partners shall provide their full-time services and best efforts on behalf of the partnership. No partner shall receive a salary for services rendered to the partnership. Each partner shall have equal rights to manage and control the partnership and its business. Should there be differences between the partners concerning ordinary business matters, a decision shall be made by unanimous vote. It is understood that the partners may elect one of the partners to conduct the day-to-day business of the partnership; however, no partner shall be able to bind the partnership by act or contract to any liability exceeding $5,000 without the prior written consent of each partner.

4. <u>Capital Contribution</u>.  The capital contribution of each partner to the partnership shall consist of the following property, services, or cash which each partner agrees to contribute:

| Name Of Partner | Capital Contribution | Agreed-Upon Cash | % Share |
|---|---|---|---|
| DAVID GARRET | $500 | $500 | 54 |
| ANTHONY BERGIN | $300 | $300 | 46 |

The partnership shall maintain a capital account record for each partner; should any partner's capital account fall below the agreed to amount, then that partner shall (1) have his share of partnership profits then due and payable applied instead to his capital account; and (2) pay any deficiency to the partnership if his share of partnership profits is not yet due and payable or, if it is, his share is insufficient to cancel the deficiency.

5. <u>Profits and Losses</u>.  The profits and losses of the partnership shall be divided by the partners according to a mutually agreeable schedule and at the end of each calendar year according to the proportions listed above.

6. <u>Term/Termination</u>.  The term of this Agreement shall be for a period of TEN years, unless the partners mutually agree in writing to a shorter period. Should the partnership be terminated by unanimous vote, the assets and cash of the partnership shall be used to pay all creditors, with the remaining amounts to be distributed to the partners according to their proportionate share.

7. <u>Disputes.</u>  This Partnership Agreement shall be governed by the laws of the State of WASHINGTON.  Any disputes arising between the partners as a result of this Agreement shall be settled by arbitration in accordance with the rules of the American Arbitration Association and judgment upon the award rendered may be entered in any court having jurisdiction thereof.

8. **Withdrawal/Death of Partner.** In the event a partner withdraws or retires from the partnership for any reason, including death, the remaining partners may continue to operate the partnership using the same name. A withdrawing partner shall be obligated to give sixty (60) days' prior written notice of his/her intention to withdraw or retire and shall be obligated to sell his/her interest in the partnership. No partner shall transfer interest in the partnership to any other party without the written consent of the remaining partner(s). The remaining partner(s) shall pay the withdrawing or retiring partner, or to the legal representative of the deceased or disabled partner, the value of his interest in the partnership, or (a) the sum of his capital account, (b) any unpaid loans due him, (c) his proportionate share of accrued net profits remaining undistributed in his capital account, and (d) his interest in any prior agreed appreciation in the value of the partnership property over its book value. No value for good will shall be included in determining the value of the partner's interest.

9. **Non-Compete Agreement.** A partner who retires or withdraws from the partnership shall not directly or indirectly engage in a business which is or which would be competitive with the existing or then anticipated business of the partnership for a period of 30 DAYS, in those 30 DAYS of this State where the partnership is currently doing or planning to do business.

IN WITNESS WHEREOF, the partners have duly executed this Agreement on the day and year set forth hereinabove.

Partner                          Partner

David Butter          Anthony Bergin
5 - 19 -2015      05  19   2015

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT "2"

EDMONDSON IP L:AW

## RECOURSE LOAN AND PROMISSORY NOTE FOR TLJ LLC

**$5,000**                                          **Seattle, WA**
**Principal Amount**              **Date: Sunday, November 22 2015**

FOR VALUE RECEIVED, the receipt of which is acknowledged, the undersigned TLJ LLC promises to pay to the order of JOHN MOTTA OF 14659 NE 179TH STREET, WOODINVILLE, WASHINGTON 98072(the "Holder") the sum of FIVE Thousand dollars ($5,000.00).As well as a one time payment of SEVEN HUNDRED AND FIFTY DOLLARS ($750.00) deemed to be interest on the principal with the **total repayment to the Holder equaling $5750.00**

Is is agreed by both parties that the maker will issue funds to TLJ LLC through its CHASE banking account. ROUTING 325070760 Account number 752696000 ON MONDAY NOVEMBER 23, 2015

It is agreed by both parties that TLJ LLC will use the funds to launch it's brand. Specifically, the funds will only be used for media, legal, production and operating expenses related to launching the companies first product, Men's and Women's hat.

Both parties agree the note will be repaid in full, on or before Friday January 22 2016.

SECURITY: Is is agreed by both parties that the holder of this note, by the signature of this note, will hold all TRADEMARKS, DESIGNS AND INTELECTUAL PROPERTY held by the company. In the event of default by the company, the company agrees to permanently transfer OWNERSHOP     of     all     TRADEMARKS,     DESIGNS     AND

- 1 -

INTELECTUAL PROPERTY to the holder.

In the event this note shall be in default, and placed with an attorney for collection, then the undersigned agrees to pay all reasonable attorney fees and costs of collection. The prosecution of this note will take place in, and under the laws of the State of Washington. In addition, upon default the undersigned agree to pay interest on the unpaid balance at the rate of fifteen (15%) percent per annum. All payments hereunder shall be made to such address as may from time to time be designated by any holder hereof. All notices hereunder to Maker shall be at the following address,23720 NE 127th ST REDMOND WA 981053

This promissory note represents a recourse debt for which collateral of INTELECTUAL PROPERTY is being given to Holder

**MAKER**

**Anthony Bergin**
**CEO, TLJ LLC**
**HOLDER**

**HOLDER**

**JOHN MOTTA**

- 2 -

RECOURSE PROMISSORY NOTE

1
2
3
4
5
6
7
8

# EXHIBIT "3"

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

EDMONDSON IP L:AW



# RECOURSE LOAN AND PROMISSORY NOTE FOR TLJ LLC

**$20,000**                                         **Seattle, WA**
**Principal Amount**                  **Date: Sunday, November 22 2015**

FOR VALUE RECEIVED, the receipt of which is acknowledged, the undersigned TLJ LLC promises to pay to the order of JOSEPH MOTTA OF BELLEVUE, WASHINGTON (the "Holder") the sum of TWENTY Thousand dollars ($20,000.00) .As well as a one time payment of THREE THOUSAND DOLLARS ($3,000.00) deemed to be interest on the principal (15%) with the **total repayment to the Holder equaling $23,000.00**

**It is agreed by both parties that the holder of this note may choose to convert debt into shares (valued by a 3rd party at the time of the repayment) from the companies ISOP (Investor Stock Option Program). It is agreed by both parties that the ISOP program will be created before the date of maturity of this note.**

It is agreed by both parties that the maker will issue funds to TLJ LLC through its CHASE banking account. ROUTING 325070760 Account number 752696000 within 14 days of this agreement.

It is agreed by both parties that TLJ LLC will use the funds to launch its brand. Specifically, the funds will be used for media, legal, production, operating expenses and other expenses related to launching and sustaining the companies first product, Men's and Women's hats and T-shirts.

It is agreed that within 120 days of the establishment of this agreement, an advisory board will be established. It is agreed that MOTTA is an

expert in the field of OPERATION MANAGEMENT OF E-COMMERCE RETAIL AND WHOLESALE based on his currently held leadership position at AMAZON. It is agreed that MOTTA will join the advisory board and advise the company from time to time on OPERATIONAL FUNCTIONS.

Both parties agree the note will be repaid in full, on or before November 22, 2016.

SECURITY: It is agreed by both parties that the holder of this note, by the signature of this note, will hold all TRADEMARKS, DESIGNS AND INTELLECTUAL PROPERTY held by the company. In the event of default by the company, the company agrees to permanently transfer OWNERSHIP of all TRADEMARKS, DESIGNS AND INTELLECTUAL PROPERTY to the holder.

In the event this note shall be in default, and placed with an attorney for collection, then the undersigned agrees to pay all reasonable attorney fees and costs of collection. The prosecution of this note will take place in, and under the laws of the State of Washington.  In addition, upon default the undersigned agree to pay interest on the unpaid balance at the rate of fifteen (15%) percent per annum.  All payments hereunder shall be made to such address as may from time to time be designated by any holder hereof.  All notices hereunder to Maker shall be at the following address, 23720 NE 127th ST REDMOND WA 981053

This promissory note represents a recourse debt for which collateral of INTELLECTUAL PROPERTY is being given to Holder.

**MAKER**

Anthony Bergin
CEO, TLJ LLC

**HOLDER**

JOSEPH MOTTA

- 3 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT "4"



**BakerHostetler**

Baker&Hostetler LLP

999 Third Avenue
Suite 3600
Seattle, WA  98104-4040

T  206.332.1380
F  206.624.7317
www.bakerlaw.com

Timothy D. Casey
direct dial: 206.332.1107
TCasey@bakerlaw.com

September 7, 2016

W. James Kotlowski
Kotlowski Law Office PLLC
Logan Building
500 Union Street, Suite 510
Seattle, Washington 98101

Dear Mr. Kotlowski:

This letter is in response to your letter of August 25, 2016 on behalf of Mr. Garret. In this regard, we represent TLJ, LLC and Materia Group LLC.

I will start by correcting a number of apparent misunderstandings in your letter. First, we are not aware of TLJ LLC operating under the DBA of "LUMBERUNION." No DBA has been registered on TLJ LLC's behalf in this regard. On the other hand, the DBA "LUMBERUNION" has been registered by Materia Group LLC.

Second, TLJ LLC has no registered intellectual property. We represented TLJ LLC in preparing, filing and prosecuting a number of trademark applications with the United States Patent and Trademark Office, namely, U.S. Application Serial Nos. 86/798,206 for LUMBERUNION (design), 86/798,202 for LUMBERUNION (word) and 86/798,207 for LUMBERJOCK (design). All of those applications have been approved for publication in the Trademark Gazette of the United States Patent and Trademark Office and the LUMBERUNION (design) was published without opposition, although no statement of use has been filed so the application has not resulted in a registration. The other two applications were opposed upon publication by a Turkish company, and are actively in litigation at this time, and are therefore not registered.

Third, our firm had nothing to do with the formation of Materia Group LLC and does not represent Materia Group LLC for corporate organizational or operational purposes. Mr. Powell merely agreed to operate as the registered agent for Materia Group so that a personal address of any of the principals would not have to be used for that purpose.

*Atlanta    Chicago    Cincinnati    Cleveland    Columbus    Costa Mesa    Denver*
*Houston    Los Angeles    New York    Orlando    Philadelphia    Seattle    Washington, DC*

W. James Kotlowski
September 7, 2016
Page 2

Fourth, we are not aware of any conflict between TLJ LLC and Materia Group LLC that would require us to stop representing either company. We are aware of conflicts between Mr. Garret and Mr. Bergin, but we only represent the companies and do not represent either of those individuals, so those conflicts are not relevant to our representation of the companies. Accordingly, we decline your request to "disqualify" ourselves, whatever that is intended to mean, or to withdraw from further representation of either company. We will continue to represent TLJ LLC until TLJ LLC instructs us otherwise.

Fifth, TLJ LLC does not own the trademarks to which you refer. Pursuant to a Recourse Loan and Promissory Note entered by TLJ LLC in November 22, 2015, that pledged all of TLJ LLC's then existing trademarks, designs and intellectual property as security for the Note, which Note was not repaid by its due date of January 22, 2016, those trademarks, designs and intellectual property were assigned to the holder of the Note, which subsequently assigned the same to Materia Group LLC. Mr. Garret was aware of this Note and its terms, as well as the subsequent outcome of the default. A copy of the Note is attached for your information.

Sixth, as Materia Group LLC now owns those trademarks, designs and intellectual property, Materia Group LLC demands that Mr. Garret return to Materia Group LLC any goods that bear the trademarks, designs or intellectual property and discontinue any use of the same in physical or electronic form. Mr. Garret can continue to take credit for his creative endeavors associated with the same, such as in a resume, social media pages, web sites, etc., but Mr. Garret may not use those trademarks, designs and intellectual property for the marketing or selling of goods or services.

Finally, we do not represent Mr. Bergin in his personal capacity. Accordingly, we are in no position to advise him regarding legal matters.

Regards,

Timothy D. Casey
Partner

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT "5"

# Certificate of Registration



This Certificate issued under the seal of the Copyright
Office in accordance with title 17, *United States Code,*
attests that registration has been made for the work
identified below. The information on this certificate has
been made a part of the Copyright Office records.



**Registration Number**
**TX 8-704-634**

**Effective Date of Registration:**
February 12, 2019

United States Register of Copyrights and Director

## Title

**Title of Work:** LunberUnion

## Completion/Publication

**Year of Completion:** 2015
**Date of 1st Publication:** September 28, 2015
**Nation of 1st Publication:** United States

## Author

● **Author:** David Garret
**Author Created:** artwork
**Citizen of:** United States

## Copyright Claimant

**Copyright Claimant:** David Garret
23515 NE Novelty Hill Rd, Suite B-221, Redmond, WA, 98053, United States

## Rights and Permissions

**Organization Name:** Edmondson IP Law
**Name:** J Curtis Edmondson
**Email:** jcedmondson@edmolaw.com
**Telephone:** (503)336-3749
**Address:** 3699 NE John Olsen Ave
Hillsboro, OR 97124 United States

## Certification

**Name:** J. Curtis Edmondson
**Date:** February 12, 2019

# Certificate of Registration



This Certificate issued under the seal of the Copyright
Office in accordance with title 17, *United States Code*,
attests that registration has been made for the work
identified below. The information on this certificate has
been made a part of the Copyright Office records.

*Kerry H. Tesla*

United States Register of Copyrights and Director



**Registration Number**

## VA 2-157-360

**Effective Date of Registration:**
February 12, 2019

## Title
_____

**Title of Work:** LumberJacked

## Completion/Publication
_____

**Year of Completion:** 2015
**Date of 1st Publication:** June 20, 2015
**Nation of 1ˢᵗ Publication:** United States

## Author
_____

- **Author:** David Garret
  **Author Created:** 2-D artwork
  **Citizen of:** United States
  **Year Born:** 1981

## Copyright Claimant
_____

**Copyright Claimant:** David Garrett
23515 NE Novelty Hill Rd, Suite B-221, Redmond, WA, United States

## Certification
_____

**Name:** J. Curtis Edmondson
**Date:** February 12, 2019
**Applicant's Tracking Number:** GAR 5.006.US

**Copyright Office notes:** Basis for Registration: Registration is based on the 2-dartwork. Copyright does
not protect names, titles, short phrases or slogans. 37 CFR 202.1

Page 1 of 1

# Certificate of Registration



This Certificate issued under the seal of the Copyright
Office in accordance with title 17, *United States Code*,
attests that registration has been made for the work
identified below. The information on this certificate has
been made a part of the Copyright Office records.



**Registration Number**

## VA 2-153-864

**Effective Date of Registration:**
February 14, 2019

*Kay. H. Teske*

United States Register of Copyrights and Director

## Title _____

Title of Work: LumberUnion

## Completion/Publication _____

Year of Completion: 2015
Date of 1st Publication: September 28, 2015
Nation of 1st Publication: United States

## Author _____

- Author: David Garret
  Author Created: 2-D artwork
  Citizen of: United States

## Copyright Claimant _____

Copyright Claimant: David Garret
23515 NE Novelty Hill Rd, Redmond, WA, 98053, United States

## Rights and Permissions _____

Organization Name: Edmondson IP Law
Name: Joseph Edmondson
Email: jcedmondson@edmolaw.com
Telephone: (503)336-3749
Address: 3699 NE John Olsen Ave
Hillsboro, OR 97124 United States

## Certification _____

Name: J. Curtis Edmondson
Date: February 14, 2019

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT "6"

## TRADEMARK ASSIGNMENT

This agreement by and between John Motta, an individual (hereinafter "Motta"), located at of 14659 NE 179th Street, Woodinville, Washington 98072 and Materia Group LLC, a Washington State limited liability company, located at 10902 NE 37th Pl., Suite 2, Bellevue, WA 98004.

WHEREAS, TLJ LLC, a Washington corporation, with a place of business at 23720 NE 127th Street, Redmond WA 98053 US  (hereafter "TLJ"), adopted, owned and used in commerce at least the trademarks as set forth in the attached Schedule A (hereinafter "the Marks");

WHEREAS, on November 22, 2015, TLJ entered into a Recourse Loan and Promissory Note, as the maker of the note, in the sum of $          U.S. (hereinafter "the Note") payable upon default to Motta, as holder of the Note;

WHEREAS, the TRADEMARKS, DESIGNS AND INTELLECTUAL PROPERTY held by TLJ, including the Marks and the goodwill and associated business connected therewith, was pledged as security for the Note in the event of default;

WHEREAS, the Note was due for payment on January 22, 2016;

WHEREAS, TLJ defaulted on said Note, thereby transferring all right, title and interest in and to the TRADEMARKS, DESIGNS AND INTELLECTUAL PROPERTY, including the goodwill in the Marks and the associated business, such as the designs manifest on certain hats and shirts and the right to thereafter market and sell such goods, to Motta;

WHEREAS, Motta, as the legal and beneficial owner of the TRADEMARKS, DESIGNS AND INTELLECTUAL PROPERTY wishes to assign all right, title and interest in and to the TRADEMARKS, DESIGNS AND INTELLECTUAL PROPERTY to Materia Group LLC;

WHEREAS, Materia Group LLC wishes to purchase said rights in and to the TRADEMARKS, DESIGNS AND INTELLECTUAL PROPERTY for the sum of the Note, plus interest of $          U.S. on the sum of the Note for a total purchase price of $

NOW, THEREFORE, for good and valuable consideration, receipt of which is hereby acknowledged, and intending to be legally bound, effective as of the date of last signature hereto, Motta, as the beneficial and legal owner of the TRADEMARKS, DESIGNS AND INTELLECTUAL PROPERTY, has and does hereby has assign sell, transfer , assign and convey to Materia Group LLC, all right, title, and interest in and to the TRADEMARKS, DESIGNS AND INTELLECTUAL PROPERTY and all applications and registrations related thereto, together with the goodwill of business symbolized thereby including all assets relating to the TRADEMARKS, DESIGNS AND INTELLECTUAL PROPERTY and without limitation the right to sue and recover damages for past infringements thereof.

Assignor

Name: John Motta

9-10-2016

Date (required):

Assignee
Materia Group LLC

Date (required):

Name: Anthony Bergin
Title:
SCHEDULE A

| TRADEMARK | U.S. Application Serial No. |
|---|---|
| LUMBERUNION (word) | 86798202 |
| LUMBERUNION (design) | 86798206 |
| LUMBERJOCK (design) | 86798207 |

## NUNC PRO TUNC ASSIGNMENT

This is Nunc Pro Tunc assignment between TLJ LLC, ("TLJ") with a registered address of 23720 NE 127th Street, Redmond WA 98053, as the original recorded owner of the Marks identified on Schedule A (the "Marks") and John Motta, an individual ("Motta"), with an address of 14659 NE 179th Street, Woodinville, Washington 98072;

WHEREAS, TLJ adopted, owned and used the Marks in commerce, with a date of first use in interstate commerce at least as early as August 31, 2015 and/or November 25, 2015 as applicable;

WHEREAS, on November 22, 2015, TLJ entered into a Recourse Loan and Promissory Note, as the maker of the note, payable on default to Motta, as holder of the note;

WHEREAS, the Marks, and all intellectual property held by TLJ, including the goodwill in the Marks, among other rights and interests, were pledged as security for the Note in the event of default;

WHEREAS, on January 22, 2016, on default of said note, TLJ transferred all right, title and interest in and to the Marks, including the goodwill in the Marks among other intellectual property conveyed, including the associated business on January 22, 2016;

NOW THEREFORE, for this confirmatory assignment of rights;

TLJ confirms and acknowledges that on default of the Recourse Loan and Promissory Note, it has transferred all rights in the Marks to Motta as the legal and beneficial owner of the Marks, together with the goodwill in the Marks, and associated business, among other intellectual property, and the associated business and assets related thereto, together with any choses in action relating thereto, and the right to bring suit for past infringement of the Marks.

IN WITNESS WHEREOF, TLJ has confirmed the execution of this Nunc Pro Tunc Assignment.

1  22  2016
_____
Date

TLJ LLC
_____
By: Anthony Bergin
Member

Schedule A

| TRADEMARK | U.S. Application Serial No. |
|---|---|
| LUMBERUNION (word) | 86798202 |
| LUMBERUNION (design) | 86798206 |
| LUMBERJOCK (design) | 86798207 |

4828-3373-6902.1

## NUNC PRO TUNC ASSIGNMENT

This is Nunc Pro Tunc assignment between TLJ LLC, ("TLJ") with a registered address of 23720 NE 127th Street, Redmond WA 98053, as the original recorded owner of the Marks identified on Schedule A (the "Marks") and John Motta, an individual ("Motta"), with an address of 14659 NE 179th Street, Woodinville, Washington 98072;

WHEREAS, TLJ adopted, owned and used the Marks in commerce, with a date of first use in interstate commerce at least as early as August 31, 2015 and/or November 25, 2015 as applicable;

WHEREAS, on November 22, 2015, TLJ entered into a Recourse Loan and Promissory Note, as the maker of the note, payable on default to Motta, as holder of the note;

WHEREAS, the Marks, and all intellectual property held by TLJ, including the goodwill in the Marks, among other rights and interests, were pledged as security for the Note in the event of default;

WHEREAS, on January 22, 2016, on default of said note, TLJ transferred all right, title and interest in and to the Marks, including the goodwill in the Marks among other intellectual property conveyed, including the associated business on January 22, 2016;

NOW THEREFORE, for this confirmatory assignment of rights:

TLJ confirms and acknowledges that on default of the Recourse Loan and Promissory Note, it has transferred all rights in the Marks to Motta as the legal and beneficial owner of the Marks, together with the goodwill in the Marks, and associated business, among other intellectual property, and the associated business and assets related thereto, together with any choses in action relating thereto, and the right to bring suit for past infringement of the Marks.

IN WITNESS WHEREOF, TLJ has confirmed the execution of this Nunc Pro Tunc Assignment.

05 / 9  2018
Date

TLJ LLC

By: Anthony Bergin
Member

Schedule A

| TRADEMARK | U.S. Application Serial No. |
|---|---|
| LUMBERUNION (word) | 86798202 |
| LUMBERUNION (design) | 86798206 |
| LUMBERJOCK (design) | 86798207 |

4828-8375-6902.1

## TRADEMARK ASSIGNMENT

This agreement by and between John Motta, an individual (hereinafter "Motta"), located at of 14659 NE 179th Street, Woodinville, Washington 98072 and Materia Group LLC, a Washington State limited liability company, located at 10902 NE 37th Pl., Suite 2, Bellevue, WA 98004.

WHEREAS, TLJ LLC, a Washington corporation, with a place of business at 23720 NE 127th Street, Redmond WA 98053 US (hereafter "TLJ"), adopted, owned and used in commerce at least the trademarks as set forth in the attached Schedule A (hereinafter "the Marks");

WHEREAS, on November 22, 2015, TLJ entered into a Recourse Loan and Promissory Note, as the maker of the note, in the sum of $'           U.S. (hereinafter "the Note") payable upon default to Motta, as holder of the Note;

WHEREAS, the TRADEMARKS, DESIGNS AND INTELLECTUAL PROPERTY held by TLJ, including the Marks and the goodwill and associated business connected therewith, was pledged as security for the Note in the event of default;

WHEREAS, the Note was due for payment on January 22, 2016;

WHEREAS, TLJ defaulted on said Note, thereby transferring all right, title and interest in and to the TRADEMARKS, DESIGNS AND INTELLECTUAL PROPERTY, including the goodwill in the Marks and the associated business, such as the designs manifest on certain hats and shirts and the right to thereafter market and sell such goods, to Motta;

WHEREAS, Motta, as the legal and beneficial owner of the TRADEMARKS, DESIGNS AND INTELLECTUAL PROPERTY wishes to assign all right, title and interest in and to the TRADEMARKS, DESIGNS AND INTELLECTUAL PROPERTY to Materia Group LLC;

WHEREAS, Materia Group LLC wishes to purchase said rights in and to the TRADEMARKS, DESIGNS AND INTELLECTUAL PROPERTY for the sum of the Note, plus interest of $           U.S. on the sum of the Note for a total purchase price of $

NOW, THEREFORE, for good and valuable consideration, receipt of which is hereby acknowledged, and intending to be legally bound, effective as of the date of last signature hereto, Motta, as the beneficial and legal owner of the TRADEMARKS, DESIGNS AND INTELLECTUAL PROPERTY, has and does hereby has assign sell, transfer , assign and convey to Materia Group LLC, all right, title, and interest in and to the TRADEMARKS, DESIGNS AND INTELLECTUAL PROPERTY and all applications and registrations related thereto, together with the goodwill of business symbolized thereby including all assets relating to the TRADEMARKS, DESIGNS AND INTELLECTUAL PROPERTY and without limitation the right to sue and recover damages for past infringements thereof.

Assignor


_____

Name: John Motta

Date (required): 9-10-2016


Assignee
Materia Group LLC

Date (required):

Name: Anthony Bergin

Title:

SCHEDULE A

| TRADEMARK | U.S. Application Serial No. |
|---|---|
| LUMBERUNION (word) | 86798202 |
| LUMBERUNION (design) | 86798206 |
| LUMBERJOCK (design) | 86798207 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT "7"



# BakerHostetler

**Baker&Hostetler** LLP

999 Third Avenue
Suite 3600
Seattle, WA  98104-4040

T  206.332.1380
F  206.624.7317
www.bakerlaw.com

Timothy D. Casey
direct dial: 206.332.1107
tcasey@bakerlaw.com

September 16, 2015

Mr. Anthony Bergin
TLJ LLC
23720 NE 127th St.
Redmond, WA 98053

Re:     Representation of TLJ LLC

Dear Anthony:

Thank you for selecting Baker & Hostetler LLP to represent TLJ LLC in connection with trademark applications, brand protection, clothing design protection for the LumberJock clothing brand.  We look forward to serving your needs and to establishing a mutually satisfactory relationship.

The purpose of this letter is to confirm our engagement as counsel and to provide you certain information about our fees, billing and collection policies, and other terms that will govern our relationship.  We believe it is helpful to explain to our clients the nature and terms of our representation at the beginning of our relationship.  Accordingly, we have attached to this letter our firm's Standard Terms of Engagement.

You have asked us to perform the trademark preparation and prosecution and possibly related transactions.  You have not asked us to perform any other services or functions or assume any other responsibilities.  If, in the future, you ask us to perform other services, it may be necessary to modify the current engagement.

For the purpose of checking whether there exists any conflict of interest with respect to this engagement, we have searched our conflict of interest database under the following:

TLJ LLC

We will assume that the above listing is accurate and complete unless you otherwise advise us.  We also request that you notify us promptly if any additional searches are required because of any change in your circumstances.

Our professional fees for legal services will be determined primarily by the amount of time our attorneys and other personnel spend performing services on your behalf and their applicable hourly rates. Our attorneys' hourly rates vary depending upon the experience and

TLJ LLC
May 13, 2015
Page 2

expertise of the attorney providing the service and the type of work being handled.  My current hourly rate for this matter is $500 and Bill Powell's current rate is $310.

In addition to fees for our professional services, there may be charges for other costs and expenses which we incur in performing services on your behalf.

Intellectual Property Provisions

To the extent we represent you regarding your brands and trademarks relating to clothing ("the Matter"), our responsibilities are limited to performance of services related to the Matter. Because we are not your general counsel, acceptance of this engagement does not involve an undertaking to represent you or your interests in any other matter. Any expansion of the scope of our representation must be agreed to in writing by both you and us. You understand and agree that the receipt or use of your confidential or other information, whether from you or others, in the course of this representation will not give rise to any expectation on your part that we will render any other advice or services.

I will be primarily responsible for the supervision of the Matter, but you are engaging the firm, not me individually. As and when necessary, I will draw upon the talents of other lawyers and non-lawyers within the firm.

You understand and agree that, in order for us to represent you effectively, it is necessary for you to assist and cooperate with the firm. You agree to make yourselves (including your employees if applicable) reasonably available (1) to discuss issues as they arise in this matter; (2) to attend and participate in meetings, preparation sessions, and other activities in connection with the representation; and (3) to provide complete and accurate information and documents to us on a timely basis.

We represent a number of clients operating in the clothing industry, and we may represent competitors of yours. You understand that, in the course of advising and representing other businesses in this industry, the firm will learn confidences and secrets of other clients who are or may be business competitors of yours. You understand and agree that the firm, in fulfilling its professional obligations to its other clients, may not disclose the secrets and confidences of those clients to you, and you agree that the firm shall be under no obligation to you to disclose to you the confidences and secrets of other clients. In fulfillment of the firm's obligations to you, the firm will, of course, not disclose the secrets and confidences of your to other clients.

There is always the possibility that we may be called upon by other clients, present or future, to act in an adverse position to you. You understand and agree that we shall not be prohibited, during the course of our above-described representation or thereafter, from representing any existing or future clients in any other matter, including (without limitation) the prosecution or defense of litigation in which such clients are, or may be, adverse to you, provided that such matter is not substantially related to the matter in which we are representing you, and does not require us to use confidential information that we have learned from you while working on your behalf. In the event we do undertake matters for other clients in these circumstances, no lawyers working on your matter will work on the matter for the other client; and an ethical screen will be established at the outset of the other engagement between the lawyers working on this Matter and the lawyers working for the other client.

TLJ LLC
May 13, 2015
Page 3

By countersigning this engagement letter, you consent to the firm's representation of other clients in the manner and to the extent described above and subject to the firm's maintaining your, and other clients', confidences and secrets separately and without disclosing such confidences and secrets to the other(s). You understand and agree that you have the option to engage other counsel who do not represent other clients in the access control and machine vision industries. You further understand that prior to countersigning this engagement letter, you may seek advice from other counsel as to the advisability of giving the consents contained herein, and if you have any questions regarding these or other terms of this letter, you should obtain such advice before countersigning this engagement letter.

If the terms described above and in the attached Standard Terms of Engagement are acceptable to you, please sign a copy and return it to me along with a retainer of $3000 to be used against initial charges.  Upon receipt of the signed copy and the retainer, we will begin our work on this matter.

We look forward to working with you.

Best regards,


Timothy D. Casey

Attachments:
Standard Terms of Engagement
ACCEPTED AND AGREED TO:

Anthony Bergin

_____
                    (Signature)

_____ CEO _____
                    (Title)

9 25 2015
                    (Date)

TLJ LLC
May 13, 2015
Page 4

## STANDARD TERMS OF ENGAGEMENT

### Introduction

The purpose of this document is to explain our relationship with you, our billing practices, our obligations to you, and your obligations to us in the belief that our relationship will benefit from a mutual understanding of these matters at the beginning of our relationship. We urge you to call us anytime you have a question relating to any of these matters. We strive to have satisfied clients and your satisfaction is very important to us.

Your agreement to this engagement constitutes your acceptance of the following terms and conditions. If you find any of these terms and conditions unacceptable, please tell us now so that we can try to resolve any differences and proceed on a mutually satisfactory basis.

### Our Relationship

Our engagement and the legal services we will provide are limited to the matter described in the accompanying letter. Any change in our engagement or the legal services we are to provide to you must be mutually approved in writing. The services we provide are strictly legal services; we do not provide business, personal, financial, investment, accounting or other services. You will provide us with the factual information and materials we need to perform the legal services identified in the accompanying letter, and we will perform the necessary legal services and give you the necessary legal advice. You will make all business, personal, financial, investment, or accounting decisions that are required, including in the case of litigation, the decision whether or not to settle the case. You will not rely on us for business, personal, financial, investment, or accounting advice and will not expect us to investigate the character or credit of persons or entities with whom you are dealing, unless we have expressly agreed to do so in the accompanying letter.

### Confidentiality and Other Matters

As your attorneys, we owe you duties of confidentiality, loyalty, and competent and zealous representation. We are required to preserve your confidences and secrets. This obligation and the attorney-client communication privilege exist in order to facilitate and encourage candid communication between a client and his or her attorney. We can adequately represent you and give you sound legal advice only if you make us aware of all information and documents that might be relevant to the matter we are undertaking for you. Accordingly, we urge you to communicate with us fully and without reservation so that we can properly perform legal services for you and give you legal advice with respect to the matter on which you have engaged us.

You should understand, however, that in those matters where we are representing a corporation or other legal entity, our attorney-client relationship is with that specific corporation or legal entity and not with its individual officers, directors, executives, employees, shareholders, partners, or other persons in similar positions, or with its parent, subsidiary, or affiliated corporations or persons. In such cases, our professional duties are owed only to the corporation or legal entity that we have agreed to represent, and you will not assert a conflict of interest because we represent other persons, corporations, or entities that are adverse to any of such related persons, corporations, or other legal entities. In some situations where there is no conflict of interest, we may represent individual officers, directors, executives, or employees, or parent, subsidiary, or affiliated corporations of a corporation or other legal entity as well as the corporation or other legal entity but such multiple representations will be clearly stated in the accompanying letter.

TLJ LLC
May 13, 2015
Page 5

**Professional Fees**

In determining the professional fee for our legal services we are generally guided primarily by the amount of time devoted to your matter and the hourly rates of the attorneys performing the services, although we offer other fee arrangements in appropriate situations.  If another fee arrangement has been mutually agreed to for your work, it will be set forth in the accompanying letter.

We may also consider other factors, as appropriate, including: the novelty and difficulty of the legal issues involved; the legal skill required to do the work; the fee customarily charged by comparable law firms for similar legal services; the importance of the work to you or the amount of money involved or at risk and the results obtained; any time constraints imposed by you or the circumstances; and the nature and length of our professional relationship with you.

The hourly rate assigned to each attorney reflects his or her ability, experience, reputation, market rates in each location for his or her area of practice, the firm's costs, and other factors deemed appropriate by the firm.  Our hourly rates are subject to review and adjustment from time to time, at least annually, based on the foregoing factors.  Any changes in hourly rates are usually applied prospectively, although they may also be applied to time that has been recorded but not yet billed.  We will provide you with notice of any changes to our rates or expense charges, either through correspondence or invoices indicating the rates then in effect.  Our attorneys and other personnel will record time spent on your behalf in quarter-hour increments unless otherwise agreed between you and us.

We will seek to perform your work cost efficiently.  This does not mean, however, that we will necessarily assign an attorney with the lowest hourly rate.  When selecting attorneys to perform legal services required by your engagement, we generally consider the skill, ability, and experience levels required for the work, prior commitments of our attorneys, and the time demands of your matter and other matters, as well as the hourly rates of our attorneys, unless you request otherwise.  Under some circumstances, attorneys with higher hourly rates may be assigned in order to provide specialized legal skills, to complete the matter more quickly, to meet time constraints imposed by you or the circumstances, to seek to perform the work at a lower overall professional fee, or because of attorney workloads.

At times we may use temporary personnel with appropriate credentials to complete certain work under our supervision.  We will charge you for the time of these individuals at rates established by us based on their experience and expertise the same as we do for our direct employees.

We generally charge for travel time during normal business hours at our applicable hourly rates.  Outside normal business hours we charge one-half our applicable hourly rates unless the attorney or other person is able to work while traveling.  If the attorney or other person works on your behalf while traveling, you will be charged our applicable hourly rates regardless of the time of travel.  If the attorney or other person works on other clients' matters while traveling, you will not be charged for time during which the attorney or other person worked for other clients.

**Taxes**

The fees for services do not include any excise, sales, use, value added or other taxes, tariffs or duties that may be applicable to our services.  When we have the legal obligation to collect such taxes, tariffs or duties, the amount of such taxes, tariffs and duties will be included on our statements with other expenses and charges unless you provide us with a valid tax

TLJ LLC
May 13, 2015
Page 6

exemption certificate authorized by the appropriate taxing authority. Any payments by you to us will be made free and clear of, and without reduction for, any withholding taxes. Any such taxes that are otherwise imposed on payments to us will be your sole responsibility. You may be asked to provide us with official receipts issued by the appropriate taxing authority or such other evidence to establish that such taxes have been paid.

## Expenses and Other Charges

In addition to fees for our professional services, our statements will include out-of-pocket expenses we incur (e.g., filing fees, court reporter fees, expert witness fees, overnight courier fees, travel, and postage) and internal charges we make for other services we provide (e.g., copying, computerized legal research, long distance telephone, and faxes) in connection with performing legal services on your behalf. Out-of-pocket expenses incurred will be billed at our cost, which in some cases may be estimated. Internal charges (which may exceed direct costs and allocated overhead expense) will be billed at amounts that reflect the value of the service or industry practice. Further detail regarding any expenses or other charges will be furnished upon request. We may request an advance expense deposit from you in matters where we expect that we will be required to incur substantial out-of-pocket costs on your behalf.

**Travel Expenses.** For automobile travel, we customarily reimburse our attorneys and other personnel and charge you the Internal Revenue Service approved mileage rate, plus parking and tolls outside the cities in which our offices are located.

Actual cost is always charged for airfare, auto rental, cab fare, meals, and lodging. Our attorneys and other personnel are required to travel coach class, lowest logical airfare, unless you request or approve other arrangements in advance, the air travel time exceeds four hours, or circumstances warrant otherwise. In the latter two cases, travel will be by business class if available or first class if it is not.

**Delivery and Communications Expenses.** Postage on mail in excess of two ounces per item is billed at cost.

Air express, outside local messenger services and courier services are billed at cost. Use of our own messengers for local deliveries is charged at rates generally competitive with local messenger services.

Long-distance telephone calls are charged at costs estimated using rate tables provided by our primary vendors. Local mobile phone calls to or from clients are billed at cost, exclusive of phone rental and lease costs, which are absorbed by the caller.

**Computerized Research and Database Charges.** We utilize Lexis-Nexis and Westlaw to provide primary automated research services that assist in reducing your professional fees. In addition, we have access to other internal and external databases, which help to save money and assist in improving the quality of legal research. Our charges for use of these automated research tools are at vendor invoice, which is net of all discounts provided by the vendors.

**Photocopying and Fax Charges.** Copying is charged at $.10 per page for black & white and $.50 for color. Outgoing faxes are charged at $1.00 per page within the United States and $2.50 per page internationally. There is no charge for incoming faxes or for long distance phone charges associated with fax transmission.

TLJ LLC
May 13, 2015
Page 7

## Invoices and Payments

Unless otherwise mutually agreed, we generally render monthly invoices for legal services, expenses and other charges. Our invoices are due and payable upon receipt. Payment is considered overdue if not received within 21 days from the invoice date. If our invoices are not timely paid, we may withdraw from your representation and terminate our services. We may also assess an interest charge on any overdue invoices, whether or not we terminate services. Payments made on overdue invoices are applied first to the oldest outstanding invoice.

If you have any question about any invoice or any fee, expense, or other charge, we urge you to discuss it with us. We want you to be satisfied with the quality of our services and the reasonableness of our fees.

## Termination

Unless we have mutually agreed to continue our attorney-client relationship with respect to other matters, our attorney-client relationship with you will end upon the completion of services for the matter to which the accompanying letter applies or upon the earlier termination of our engagement by you or by us. In this regard, you have the right to terminate our attorney-client relationship at any time you wish with or without cause. An early termination of our relationship without cause will not, and an early termination of our relationship with cause may not, relieve you of your obligation to pay our reasonable fees, expenses, and other charges incurred before the termination. We also have the right, and sometimes the obligation, to terminate the engagement subject to the ethical standards in the Rules of Professional Conduct. We also reserve the right to suspend or terminate our representation, subject to such ethical standards, if you breach your obligations with respect to the engagement or do not pay the firm's invoices as specified.

## Ownership of Files and Records

Except as to records which belong to the firm, records or files which we receive from you and documents that are produced or created in connection with your representation, shall be your property, subject to any lien granted by law, rules of professional conduct and our right to make and retain copies. Upon the closing of our files after termination of the engagement, we will return records belonging to you unless you request otherwise, or unless special circumstances require us to retain such records. If you request that we retain your files we may ask that you bear the costs of storage. We shall require from you written authorization to transfer any property belonging to you to a third party. Under our record retention policy we normally destroy files ten years after a matter is closed. It is understood and agreed that we shall have the right, at our discretion, to dispose of files which have not been returned to you at such time that we determine that such files need no longer be retained.

# EXHIBIT "8"



From:  **Anthony Bergin** anthony.bergin@lumberunion.com  🖉
Subject: Materia Representation
Date:  August 9, 2016 at 11:04 AM
To:  Powell, William wpowell@bakerlaw.com, Casey, Timothy TCasey@bakerlaw.com

Hi Guys.

I have settles out the TLJ LLC balance this morning.

Attached is the signed Rep.

Thanks!

BakerHostetler

Baker&Hostetler LLP

999 Third Avenue
Suite 3600
Seattle, WA  98104-4040

T  206.332.1380
F  206.624.7317
www.bakerlaw.com

Timothy D. Casey
direct dial: 206.332.1107
tcasey@bakerlaw.com

August 3, 2016

Mr. Anthony Bergin
Materia Group LLC
10902 NE 37th Place
Suite 2
Bellevue, WA  98004

Re:   *Representation of Materia Group LLC*

Dear Anthony:

Thank you for selecting Baker & Hostetler LLP to represent Materia Group LLC in connection with trademark applications, brand protection, clothing design protection for the LumberJock, LumberUnion, and LumberJill clothing brands.  We look forward to serving your needs and to establishing a mutually satisfactory relationship.

The purpose of this letter is to confirm our engagement as counsel and to provide you certain information about our fees, billing and collection policies, and other terms that will govern our relationship.  We believe it is helpful to explain to our clients the nature and terms of our representation at the beginning of our relationship.  Accordingly, we have attached to this letter our firm's Standard Terms of Engagement.

You have asked us to perform the trademark preparation and prosecution and possibly related transactions and litigation.  You have not asked us to perform any other services or functions or assume any other responsibilities.  If, in the future, you ask us to perform other services, it may be necessary to modify the current engagement.

For the purpose of checking whether there exists any conflict of interest with respect to this engagement, we have searched our conflict of interest database under the following:

Materia Group LLC

We will assume that the above listing is accurate and complete unless you otherwise advise us.  We also request that you notify us promptly if any additional searches are required because of any change in your circumstances.

Our professional fees for legal services will be determined primarily by the amount of

Our professional fees for legal services will be determined primarily by the amount of time our attorneys and other personnel spend performing services on your behalf and their applicable hourly rates. Our attorneys' hourly rates vary depending upon the experience and

*Atlanta    Chicago    Cincinnati    Cleveland    Columbus    Costa Mesa    Denver*
*Houston    Los Angeles    New York    Orlando    Philadelphia    Seattle    Washington. DC*

Materia Group LLC
August 3, 2016
Page 2

expertise of the attorney providing the service and the type of work being handled.  My current hourly rate for this matter is $520 and Bill Powell's current rate is $325.

In addition to fees for our professional services, there may be charges for other costs and expenses which we incur in performing services on your behalf.

Intellectual Property Provisions

To the extent we represent you regarding your brands and trademarks relating to clothing ("the Matter"), our responsibilities are limited to performance of services related to the Matter. Because we are not your general counsel, acceptance of this engagement does not involve an undertaking to represent you or your interests in any other matter. Any expansion of the scope of our representation must be agreed to in writing by both you and us. You understand and agree that the receipt or use of your confidential or other information, whether from you or others, in the course of this representation will not give rise to any expectation on your part that we will render any other advice or services.

I will be primarily responsible for the supervision of the Matter, but you are engaging the firm, not me individually. As and when necessary, I will draw upon the talents of other lawyers and non-lawyers within the firm.

You understand and agree that, in order for us to represent you effectively, it is necessary for you to assist and cooperate with the firm. You agree to make yourselves (including your employees if applicable) reasonably available (1) to discuss issues as they arise in this matter; (2) to attend and participate in meetings, preparation sessions, and other activities in connection with the representation; and (3) to provide complete and accurate information and documents to us on a timely basis.

We represent a number of clients operating in the clothing industry, and we may represent competitors of yours. You understand that, in the course of advising and representing other businesses in this industry, the firm will learn confidences and secrets of other clients who are or may be business competitors of yours. You understand and agree that the firm, in fulfilling its professional obligations to its other clients, may not disclose the secrets and confidences of those clients to you, and you agree that the firm shall be under no obligation to you to disclose to you the confidences and secrets of other clients. In fulfillment of the firm's obligations to you, the firm will, of course, not disclose the secrets and confidences of your to other clients.

There is always the possibility that we may be called upon by other clients, present or future, to act in an adverse position to you. You understand and agree that we shall not be prohibited, during the course of our above-described representation or thereafter, from representing any existing or future clients in any other matter, including (without limitation) the prosecution or defense of litigation in which such clients are, or may be, adverse to you, provided that such matter is not substantially related to the matter in which we are representing you, and does not require us to use confidential information that we have learned from you while working on your behalf. In the event we do undertake matters for other clients in these circumstances, no lawyers working on your matter will work on the matter for the other client;

and an ethical screen will be established at the outset of the other engagement between the lawyers working on this Matter and the lawyers working for the other client.

Materia Group LLC
August 3, 2016
Page 3

By countersigning this engagement letter, you consent to the firm's representation of other clients in the manner and to the extent described above and subject to the firm's maintaining your, and other clients', confidences and secrets separately and without disclosing such confidences and secrets to the other(s). You understand and agree that you have the option to engage other counsel who do not represent other clients in the access control and machine vision industries. You further understand that prior to countersigning this engagement letter, you may seek advice from other counsel as to the advisability of giving the consents contained herein, and if you have any questions regarding these or other terms of this letter, you should obtain such advice before countersigning this engagement letter.

If the terms described above and in the attached Standard Terms of Engagement are acceptable to you, please sign a copy and return it to me. We will not require a retainer payment so long as all current bills due for this representation as well as for our prior representation of the predecessor assignee of the LumberJock, Lumber Jill, and LumberUnion brands, TLJ LLC, have been fully paid. Upon receipt of the signed copy and the retainer, we will begin our work on this matter.

We look forward to working with you.

Best regards,

Timothy D. Casey

Attachments:
Standard Terms of Engagement
ACCEPTED AND AGREED TO:

Anthony Bergin

_____
(Signature)

Chief Executive Officer
(Title)

08   Oct   2016
(Date)

Materia Group LLC
August 3, 2016
Page 4

## STANDARD TERMS OF ENGAGEMENT

### Introduction

The purpose of this document is to explain our relationship with you, our billing practices, our obligations to you, and your obligations to us in the belief that our relationship will benefit from a mutual understanding of these matters at the beginning of our relationship. We urge you to call us anytime you have a question relating to any of these matters. We strive to have satisfied clients and your satisfaction is very important to us.

Your agreement to this engagement constitutes your acceptance of the following terms and conditions. If you find any of these terms and conditions unacceptable, please tell us now so that we can try to resolve any differences and proceed on a mutually satisfactory basis.

### Our Relationship

Our engagement and the legal services we will provide are limited to the matter described in the accompanying letter. Any change in our engagement or the legal services we are to provide to you must be mutually approved in writing. The services we provide are strictly legal services; we do not provide business, personal, financial, investment, accounting or other services. You will provide us with the factual information and materials we need to perform the legal services identified in the accompanying letter, and we will perform the necessary legal services and give you the necessary legal advice. You will make all business, personal, financial, investment, or accounting decisions that are required, including in the case of litigation, the decision whether or not to settle the case. You will not rely on us for business, personal, financial, investment, or accounting advice and will not expect us to investigate the character or credit of persons or entities with whom you are dealing, unless we have expressly agreed to do so in the accompanying letter.

### Confidentiality and Other Matters

As your attorneys, we owe you duties of confidentiality, loyalty, and competent and zealous representation. We are required to preserve your confidences and secrets. This obligation and the attorney-client communication privilege exist in order to facilitate and encourage candid communication between a client and his or her attorney. We can adequately represent you and give you sound legal advice only if you make us aware of all information and documents that might be relevant to the matter we are undertaking for you. Accordingly, we urge you to communicate with us fully and without reservation so that we can properly perform legal services for you and give you legal advice with respect to the matter on which you have engaged us.

You should understand, however, that in those matters where we are representing a corporation or other legal entity, our attorney-client relationship is with that specific corporation or legal entity and not with its individual officers, directors, executives, employees, shareholders, partners, or other persons in similar positions, or with its parent, subsidiary, or affiliated corporations or persons. In such cases, our professional duties are owed only to the corporation or legal entity that we have agreed to represent, and you will not assert a conflict of interest because we represent other persons, corporations, or entities that are adverse to any of such related persons, corporations, or other legal entities. In some situations where there is no conflict of interest, we may represent individual officers, directors, executives, or employees, or parent, subsidiary, or affiliated corporations of a corporation or other legal entity as well as the corporation or other legal entity but such multiple representations will be clearly stated in the accompanying letter.

Materia Group LLC
August 3, 2016
Page 5

<u>Professional Fees</u>

In determining the professional fee for our legal services we are generally guided primarily by the amount of time devoted to your matter and the hourly rates of the attorneys performing the services, although we offer other fee arrangements in appropriate situations. If another fee arrangement has been mutually agreed to for your work, it will be set forth in the accompanying letter.

We may also consider other factors, as appropriate, including: the novelty and difficulty of the legal issues involved; the legal skill required to do the work; the fee customarily charged by comparable law firms for similar legal services; the importance of the work to you or the amount of money involved or at risk and the results obtained; any time constraints imposed by you or the circumstances; and the nature and length of our professional relationship with you.

The hourly rate assigned to each attorney reflects his or her ability, experience, reputation, market rates in each location for his or her area of practice, the firm's costs, and other factors deemed appropriate by the firm. Our hourly rates are subject to review and adjustment from time to time, at least annually, based on the foregoing factors. Any changes in hourly rates are usually applied prospectively, although they may also be applied to time that has been recorded but not yet billed. We will provide you with notice of any changes to our rates or expense charges, either through correspondence or invoices indicating the rates then in effect. Our attorneys and other personnel will record time spent on your behalf in quarter-hour increments unless otherwise agreed between you and us.

We will seek to perform your work cost efficiently. This does not mean, however, that we will necessarily assign an attorney with the lowest hourly rate. When selecting attorneys to perform legal services required by your engagement, we generally consider the skill, ability, and experience levels required for the work, prior commitments of our attorneys, and the time demands of your matter and other matters, as well as the hourly rates of our attorneys, unless you request otherwise. Under some circumstances, attorneys with higher hourly rates may be assigned in order to provide specialized legal skills, to complete the matter more quickly, to meet time constraints imposed by you or the circumstances, to seek to perform the work at a lower overall professional fee, or because of attorney workloads.

At times we may use temporary personnel with appropriate credentials to complete certain work under our supervision. We will charge you for the time of these individuals at rates established by us based on their experience and expertise the same as we do for our direct employees.

We generally charge for travel time during normal business hours at our applicable hourly rates. Outside normal business hours we charge one-half our applicable hourly rates unless the attorney or other person is able to work while traveling. If the attorney or other person works on your behalf while traveling, you will be charged our applicable hourly rates regardless of the time of travel. If the attorney or other person works on other clients' matters while traveling, you will not be charged for time during which the attorney or other person worked for other clients.

<u>Taxes</u>

The fees for services do not include any excise, sales, use, value added or other taxes, tariffs or duties that may be applicable to our services. When we have the legal obligation to collect such taxes, tariffs or duties, the amount of such taxes, tariffs and duties will be included on our statements with other expenses and charges unless you provide us with a valid tax

Materia Group LLC
August 3, 2016
Page 6

exemption certificate authorized by the appropriate taxing authority. Any payments by you to us will be made free and clear of, and without reduction for, any withholding taxes. Any such taxes that are otherwise imposed on payments to us will be your sole responsibility. You may be asked to provide us with official receipts issued by the appropriate taxing authority or such other evidence to establish that such taxes have been paid.

<u>Expenses and Other Charges</u>

In addition to fees for our professional services, our statements will include out-of-pocket expenses we incur (e.g., filing fees, court reporter fees, expert witness fees, overnight courier fees, travel, and postage) and internal charges we make for other services we provide (e.g., copying, computerized legal research, long distance telephone, and faxes) in connection with performing legal services on your behalf. Out-of pocket expenses incurred will be billed at our cost, which in some cases may be estimated. Internal charges (which may exceed direct costs and allocated overhead expense) will be billed at amounts that reflect the value of the service or industry practice. Further detail regarding any expenses or other charges will be furnished upon request. We may request an advance expense deposit from you in matters where we expect that we will be required to incur substantial out-of-pocket costs on your behalf.

**Travel Expenses.** For automobile travel, we customarily reimburse our attorneys and other personnel and charge you the Internal Revenue Service approved mileage rate, plus parking and tolls outside the cities in which our offices are located.

Actual cost is always charged for airfare, auto rental, cab fare, meals, and lodging. Our attorneys and other personnel are required to travel coach class, lowest logical airfare, unless you request or approve other arrangements in advance, the air travel time exceeds four hours, or circumstances warrant otherwise. In the latter two cases, travel will be by business class if available or first class if it is not.

**Delivery and Communications Expenses.** Postage on mail in excess of two ounces per item is billed at cost.

Air express, outside local messenger services and courier services are billed at cost. Use of our own messengers for local deliveries is charged at rates generally competitive with local messenger services.

Long-distance telephone calls are charged at costs estimated using rate tables provided by our primary vendors. Local mobile phone calls to or from clients are billed at cost, exclusive of phone rental and lease costs, which are absorbed by the caller.

**Computerized Research and Database Charges.** We utilize Lexis-Nexis and Westlaw to provide primary automated research services that assist in reducing your professional fees. In addition, we have access to other internal and external databases, which help to save money and assist in improving the quality of legal research. Our charges for use of these automated research tools are at vendor invoice, which is net of all discounts provided by the vendors.

**Photocopying and Fax Charges.** Copying is charged at $.10 per page for black & white and $.50 for color. Outgoing faxes are charged at $1.00 per page within the United States and $2.50 per page internationally. There is no charge for incoming faxes or for long distance phone charges associated with fax transmission.

Materia Group LLC
August 3, 2016
Page 7

Invoices and Payments

Unless otherwise mutually agreed, we generally render monthly invoices for legal services, expenses and other charges. Our invoices are due and payable upon receipt. Payment is considered overdue if not received within 21 days from the invoice date. If our invoices are not timely paid, we may withdraw from your representation and terminate our services. We may also assess an interest charge on any overdue invoices, whether or not we terminate services. Payments made on overdue invoices are applied first to the oldest outstanding invoice.

If you have any question about any invoice or any fee, expense, or other charge, we urge you to discuss it with us. We want you to be satisfied with the quality of our services and the reasonableness of our fees.

Termination

Unless we have mutually agreed to continue our attorney-client relationship with respect to other matters, our attorney-client relationship with you will end upon the completion of services for the matter to which the accompanying letter applies or upon the earlier termination of our engagement by you or by us. In this regard, you have the right to terminate our attorney-client relationship at any time you wish with or without cause. An early termination of our relationship without cause will not, and an early termination of our relationship with cause may not, relieve you of your obligation to pay our reasonable fees, expenses, and other charges incurred before the termination. We also have the right, and sometimes the obligation, to terminate the engagement subject to the ethical standards in the Rules of Professional Conduct. We also reserve the right to suspend or terminate our representation, subject to such ethical standards, if you breach your obligations with respect to the engagement or do not pay the firm's invoices as specified.

Ownership of Files and Records

Except as to records which belong to the firm, records or files which we receive from you and documents that are produced or created in connection with your representation, shall be your property, subject to any lien granted by law, rules of professional conduct and our right to make and retain copies. Upon the closing of our files after termination of the engagement, we will return records belonging to you unless you request otherwise, or unless special circumstances require us to retain such records. If you request that we retain your files we may ask that you bear the costs of storage. We shall require from you written authorization to transfer any property belonging to you to a third party. Under our record retention policy we normally destroy files ten years after a matter is closed. It is understood and agreed that we shall have the right, at our discretion, to dispose of files which have not been returned to you at such time that we determine that such files need no longer be retained.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT "9"

EDMONDSON IP L:AW

## TRADEMARK ASSIGNMENT

This agreement by and between John Motta, an individual (hereinafter "Motta"), located at of 14659 NE 179th Street, Woodinville, Washington 98072 and Materia Group LLC, a Washington State limited liability company, located at 10902 NE 37th Pl., Suite 2, Bellevue, WA 98004.

WHEREAS, TLJ LLC, a Washington corporation, with a place of business at 23720 NE 127th Street, Redmond WA 98053 US (hereafter "TLJ"), adopted, owned and used in commerce at least the trademarks as set forth in the attached Schedule A (hereinafter "the Marks");

WHEREAS, on November 22, 2015, TLJ entered into a Recourse Loan and Promissory Note, as the maker of the note, in the sum of $       U.S. (hereinafter "the Note") payable upon default to Motta, as holder of the Note;

WHEREAS, the TRADEMARKS, DESIGNS AND INTELLECTUAL PROPERTY held by TLJ, including the Marks and the goodwill and associated business connected therewith, was pledged as security for the Note in the event of default;

WHEREAS, the Note was due for payment on January 22, 2016;

WHEREAS, TLJ defaulted on said Note, thereby transferring all right, title and interest in and to the TRADEMARKS, DESIGNS AND INTELLECTUAL PROPERTY, including the goodwill in the Marks and the associated business, such as the designs manifest on certain hats and shirts and the right to thereafter market and sell such goods, to Motta;

WHEREAS, Motta, as the legal and beneficial owner of the TRADEMARKS, DESIGNS AND INTELLECTUAL PROPERTY wishes to assign all right, title and interest in and to the TRADEMARKS, DESIGNS AND INTELLECTUAL PROPERTY to Materia Group LLC;

WHEREAS, Materia Group LLC wishes to purchase said rights in and to the TRADEMARKS, DESIGNS AND INTELLECTUAL PROPERTY for the sum of the Note, plus interest of $       U.S. on the sum of the Note for a total purchase price of $

NOW, THEREFORE, for good and valuable consideration, receipt of which is hereby acknowledged, and intending to be legally bound, effective as of the date of last signature hereto, Motta, as the beneficial and legal owner of the TRADEMARKS, DESIGNS AND INTELLECTUAL PROPERTY, has and does hereby has assign sell, transfer , assign and convey to Materia Group LLC, all right, title, and interest in and to the TRADEMARKS, DESIGNS AND INTELLECTUAL PROPERTY and all applications and registrations related thereto, together with the goodwill of business symbolized thereby including all assets relating to the TRADEMARKS, DESIGNS AND INTELLECTUAL PROPERTY and without limitation the right to sue and recover damages for past infringements thereof.

Assignor

Name: John Motta

Date (required): 9-10-2016

Assignee
Materia Group LLC

Date (required):

Name: Anthony Bergin

Title:

SCHEDULE A

| TRADEMARK | U.S. Application Serial No. |
|---|---|
| LUMBERUNION (word) | 86798202 |
| LUMBERUNION (design) | 86798206 |
| LUMBERJOCK (design) | 86798207 |

## NUNC PRO TUNC ASSIGNMENT

This is Nunc Pro Tunc assignment between TLJ LLC, ("TLJ") with a registered address of 23720 NE 127th Street, Redmond WA 98053, as the original recorded owner of the Marks identified on Schedule A (the "Marks") and John Motta, an individual ("Motta"), with an address of 14659 NE 179th Street, Woodinville, Washington 98072;

WHEREAS, TLJ adopted, owned and used the Marks in commerce, with a date of first use in interstate commerce at least as early as August 31, 2015 and/or November 25, 2015 as applicable;

WHEREAS, on November 22, 2015, TLJ entered into a Recourse Loan and Promissory Note, as the maker of the note, payable on default to Motta, as holder of the note;

WHEREAS, the Marks, and all intellectual property held by TLJ, including the goodwill in the Marks, among other rights and interests, were pledged as security for the Note in the event of default;

WHEREAS, on January 22, 2016, on default of said note, TLJ transferred all right, title and interest in and to the Marks, including the goodwill in the Marks among other intellectual property conveyed, including the associated business on January 22, 2016;

NOW THEREFORE, for this confirmatory assignment of rights;

TLJ confirms and acknowledges that on default of the Recourse Loan and Promissory Note, it has transferred all rights in the Marks to Motta as the legal and beneficial owner of the Marks, together with the goodwill in the Marks, and associated business, among other intellectual property, and the associated business and assets related thereto, together with any choses in action relating thereto, and the right to bring suit for past infringement of the Marks.

IN WITNESS WHEREOF, TLJ has confirmed the execution of this Nunc Pro Tunc Assignment.

/ 22 2016

_____
Date

TLJ LLC
_____
By Anthony Bergin
Member

Schedule A

| TRADEMARK | U.S. Application Serial No. |
|---|---|
| LUMBERUNION (word) | 86798202 |
| LUMBERUNION (design) | 86798206 |
| LUMBERJOCK (design) | 86798207 |

4828-3375-6902.1

## NUNC PRO TUNC ASSIGNMENT

This is Nunc Pro Tunc assignment between TLJ LLC, ("TLJ") with a registered address of 23720 NE 127th Street, Redmond WA 98053, as the original recorded owner of the Marks identified on Schedule A (the "Marks") and John Motta, an individual ("Motta"), with an address of 14659 NE 179th Street, Woodinville, Washington 98072;

WHEREAS, TLJ adopted, owned and used the Marks in commerce, with a date of first use in interstate commerce at least as early as August 31, 2015 and/or November 25, 2015 as applicable;

WHEREAS, on November 22, 2015, TLJ entered into a Recourse Loan and Promissory Note, as the maker of the note, payable on default to Motta, as holder of the note;

WHEREAS, the Marks, and all intellectual property held by TLJ, including the goodwill in the Marks, among other rights and interests, were pledged as security for the Note in the event of default;

WHEREAS, on January 22, 2016, on default of said note, TLJ transferred all right, title and interest in and to the Marks, including the goodwill in the Marks among other intellectual property conveyed, including the associated business on January 22, 2016;

NOW THEREFORE, for this confirmatory assignment of rights:

TLJ confirms and acknowledges that on default of the Recourse Loan and Promissory Note, it has transferred all rights in the Marks to Motta as the legal and beneficial owner of the Marks, together with the goodwill in the Marks, and associated business, among other intellectual property, and the associated business and assets related thereto, together with any choses in action relating thereto, and the right to bring suit for past infringement of the Marks.

IN WITNESS WHEREOF, TLJ has confirmed the execution of this Nunc Pro Tunc Assignment.


05 / 9  2018
Date

TLJ LLC

By: Anthony Bergin
Member

Schedule A

| TRADEMARK | U.S. Application Serial No. |
|---|---|
| LUMBERUNION (word) | 86798202 |
| LUMBERUNION (design) | 86798206 |
| LUMBERJOCK (design) | 86798207 |

4828-8375-6902.1

## TRADEMARK ASSIGNMENT

This agreement by and between John Motta, an individual (hereinafter "Motta"), located at of 14659 NE 179th Street, Woodinville, Washington 98072 and Materia Group LLC, a Washington State limited liability company, located at 10902 NE 37th Pl., Suite 2, Bellevue, WA 98004.

WHEREAS, TLJ LLC, a Washington corporation, with a place of business at 23720 NE 127th Street, Redmond WA 98053 US  (hereafter "TLJ"), adopted, owned and used in commerce at least the trademarks as set forth in the attached Schedule A (hereinafter "the Marks");

WHEREAS, on November 22, 2015, TLJ entered into a Recourse Loan and Promissory Note, as the maker of the note, in the sum of $'          U.S. (hereinafter "the Note") payable upon default to Motta, as holder of the Note;

WHEREAS, the TRADEMARKS, DESIGNS AND INTELLECTUAL PROPERTY held by TLJ, including the Marks and the goodwill and associated business connected therewith, was pledged as security for the Note in the event of default;

WHEREAS, the Note was due for payment on January 22, 2016;

WHEREAS, TLJ defaulted on said Note, thereby transferring all right, title and interest in and to the TRADEMARKS, DESIGNS AND INTELLECTUAL PROPERTY, including the goodwill in the Marks and the associated business, such as the designs manifest on certain hats and shirts and the right to thereafter market and sell such goods, to Motta;

WHEREAS, Motta, as the legal and beneficial owner of the TRADEMARKS, DESIGNS AND INTELLECTUAL PROPERTY wishes to assign all right, title and interest in and to the TRADEMARKS, DESIGNS AND INTELLECTUAL PROPERTY to Materia Group LLC;

WHEREAS, Materia Group LLC wishes to purchase said rights in and to the TRADEMARKS, DESIGNS AND INTELLECTUAL PROPERTY for the sum of the Note, plus interest of $          U.S. on the sum of the Note for a total purchase price of $

NOW, THEREFORE, for good and valuable consideration, receipt of which is hereby acknowledged, and intending to be legally bound, effective as of the date of last signature hereto, Motta, as the beneficial and legal owner of the TRADEMARKS, DESIGNS AND INTELLECTUAL PROPERTY, has and does hereby has assign sell, transfer , assign and convey to Materia Group LLC, all right, title, and interest in and to the TRADEMARKS, DESIGNS AND INTELLECTUAL PROPERTY and all applications and registrations related thereto, together with the goodwill of business symbolized thereby including all assets relating to the TRADEMARKS, DESIGNS AND INTELLECTUAL PROPERTY and without limitation the right to sue and recover damages for past infringements thereof.

Assignor

Name: John Motta

Date (required): 9-10-2016

Assignee
Materia Group LLC

Date (required):

Name: Anthony Bergin
Title:
SCHEDULE A

| TRADEMARK | U.S. Application Serial No. |
|---|---|
| LUMBERUNION (word) | 86798202 |
| LUMBERUNION (design) | 86798206 |
| LUMBERJOCK (design) | 86798207 |