The Honorable Barbara J. Rothstein

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DAVID GARRET and TLJ, LLC,<br>Plaintiffs,<br><br>v.<br><br>MATERIA GROUP LLC, MATERIA GROUP, INC., DEREK MULLER, ANTHONY BERGIN, WILLIAM POWELL, JOHN MOTTA and JOSEPH MOTTA,<br>Defendants. | NO. 2:19-cv-1129<br><br>**ORDER DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT** |

## I.   INTRODUCTION

This matter comes before the Court on a Motion for Partial Summary Judgment, filed by Plaintiffs David Garret and TLJ, LLC ("Plaintiffs"). The motion seeks a judgment against Defendant Anthony Bergin ("Defendant") only, on three counts in the Complaint, for (1) breach of contract; (2) breach of fiduciary duty; and (3) breach of duty of trust and loyalty. The motion does not address other counts in the Complaint (copyright infringement, fraud, and trespass, among others), or seek judgment against any of the other defendants in this case.

Bergin opposes the motion, arguing that on certain claims, questions of fact preclude summary judgment against him, and that on other claims, summary judgment should be entered in *his* favor. Having reviewed the briefs, declarations, and exhibits filed in support of and opposition to the motion, and the remainder of the record, the Court finds and rules as follows.

ORDER DENYING MOTION FOR
SUMMARY JUDGMENT
- 1

## II.  FACTUAL BACKGROUND

Garret and Bergin met in 2014 or 2015. *See* Decl. of Anthony Bergin, ¶ 4. They began discussing plans to start a clothing brand together, and in April 2015, they entered into an "Operating Agreement" to form a business entity they called "TLJ CORP, LLC" ("TLJ"). *See* "Partnership Agreement," Decl. of David Garret, Ex. 1.[1] Garret, a clothing designer, and Bergin, who has a business background, planned to sell lumberjack-styled clothing and accessories—based on the "Pacific Northwest" style of "plaids, outdoor gear, etc."—under the brand "LumberUnion." Bergin Opp. Br. at 2; *see also* Bergin Decl., ¶ 3; Mot. at 1; Garret Decl., ¶¶ 3, 4. The company used a logo Garret claims to have designed, featuring a silhouette of a bearded man, crossed axes, and a heart shape. Bergin Decl. ¶ 5.[2]

In September 2015, Garret's father, Ronald Butler, loaned TLJ $43,000. Garret Decl., ¶ 6; Decl. of Ronald Butler, ¶ 4; Ex. 1. In November 2015, Defendant Joseph Motta (alternately referred to as Bergin's "contact" or "roommate") loaned TLJ $15,000, to be repaid in full by November 22, 2016. Garret Decl., Ex. 4. Joseph's father, Defendant John Motta, loaned the company $5,000, to be repaid in full by January 22, 2016. Garret Decl., Ex. 3. Both of the Mottas' loans were secured by the "trademarks, designs, and intellectual property" owned by TLJ, including the lumberjack logo and control of the domain name "LumberUnion.com," and TLJ agreed to transfer ownership of that IP to the note holders in the event of default. Garret Decl., Exs. 3 & 4. Garret claims Bergin did not share "details of the loans" with him, and that he had "no knowledge" the loans were secured by TLJ's intellectual property. Garret Decl. ¶ 9. Bergin

---

[1] The document, which the parties obtained off the internet, is labeled "Partnership Agreement." Both parties refer to it as an "Operating Agreement," and the parties agree that their intent was to create a limited liability company. *See* Garret Decl., Ex. 1; Bergin Decl. ¶ 11.
[2] Bergin claims he later learned that Garret did not create the design himself, but stole the artwork from a media website. Bergin Decl., ¶¶ 6-10.

ORDER DENYING MOTION FOR
SUMMARY JUDGMENT
- 2

disputes this, declaring that Garret "knew of and approved both loans. . . . He knew the loans were secured." Bergin Decl. ¶ 19.

Despite these loans, by the end of 2015 the company was running out of funds, and the business relationship between Bergin and Garret had begun to deteriorate. Garret Decl. ¶ 13. Garret claims that "[f]rom January 2016 to June 2016, Bergin took control of TLJ's limited operations without keeping me apprised of the day-to-day details, as he had assured me he would do." Garret Decl., ¶ 11. Bergin claims Garret had grown "reclusive" and "hard to reach," and says he made "multiple efforts to try to engage with Garret, but he again failed to respond or participate in any meaningful way." Bergin alleges that "[o]ur efforts to get the products in front of buyers were constantly hampered by Garret's inability to show up for meetings, present himself in a professional manner, and generally push the company forward." Bergin Decl., ¶¶ 13, 17, 22.

In mid-July 2016, Bergin approached Garret offering to buy Garret's share of the company. Garret characterizes Bergin's offer as extortionate, claiming Bergin said that Garret's father would never be repaid unless Garret agreed to "split up TLJ's debt and close up operations, or sign over the company to Bergin." Mot. at 4; citing Garret Decl. ¶13, Ex. 7. Bergin claims that by that time, "TLJ was again out of cash, had only created a limited inventory, and was not doing any business to speak of. With Garret no longer participating, [he] did not want to sink any further of [his] time or money into the business." Bergin Decl. ¶ 24.

Around this time, Bergin claims he identified dealing with the elder Motta's loan as a priority, believing TLJ's other creditors, Joseph Motta (Bergin's friend) and Ronald Butler (Garret's father), were unlikely to "initiate legal proceedings." Bergin Decl. ¶ 22. According to Bergin, "John [Motta] expressed a willingness to accept the IP and some limited inventory in

ORDER DENYING MOTION FOR
SUMMARY JUDGMENT
- 3

1   exchange for forgiveness of the loan," and Bergin "accepted this offer on behalf of TLJ." *Id*., ¶

2   25. Bergin claims Garret "knew about this." *Id*. Garret denies that at the time he was told about

3   this assignment, and alleges the transaction was a "sham" by which Bergin had schemed to steal

4   TLJ assets by transferring the IP to a "strawman." Mot. at 13.

5        Bergin claims that at some unspecified point after assignment of the IP, he resigned from

6   TLJ. Bergin Decl. ¶ 26. Then, allegedly after resigning from TLJ, on or about July 26, 2016,

7   Bergin created what Garret characterizes as a "competing" company, Defendant Materia Group

8   LLC, which later became Defendant Materia Group, Inc. ("Materia"). Bergin hired a former

9   LumberUnion brand designer, Defendant Derek Muller, among others, to help Materia's startup

10  efforts. Bergin claims John Motta, then the owner of TLJ's former IP, offered to sell that IP,

11  which Materia agreed to buy. Bergin Decl., ¶ 27. Bergin claims that apart from $1,000 worth of

12  hats, "[n]one of the inventory or IP Materia Group received from John Motta was used or sold."

13  Bergin Decl., ¶ 28.

14       Plaintiffs' motion seeks summary judgment in their favor against Defendant Bergin only,

15  on three of the nine counts in the Complaint: (1) Breach of Fiduciary Duty (Count II); (2) Breach

16  of Trust/Loyalty (Count III); and (3) Breach of Contract (Count IV). *See* Compl. ¶¶ 46-61. Bergin

17  opposes the motion, asserting that disputes of fact preclude summary judgment or, in the

18  alternative, that he is entitled to judgment on certain issues. Plaintiffs' motion also seeks

19  adjudication of the damages amount, which Plaintiffs assert is $3 million.

### III.   DISCUSSION

**A.  Standard on a Motion for Summary Judgment**

22       Summary judgment is appropriate when, viewing the facts in the light most favorable to

23  the non-moving party, there is no genuine issue of material fact which would preclude summary

judgment as a matter of law. Fed.R.Civ.P. 56(a). Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to present "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986).

Where, as with Plaintiffs' motion here, the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the movant. *See Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). Otherwise, the motion should be denied.

**B. Breach of Contract Claim**

Plaintiffs seek adjudication of their breach of contract claims against Defendant Bergin, based on the parties' Operating Agreement. More specifically, Plaintiffs claim that Bergin breached the Agreement in the following ways: (1) by starting an allegedly competing company, Materia Group, LLC, and transferring TLJ assets to that company, through "strawman" John Motta, in violation of the Operating Agreement's non-compete clause; (2) by borrowing an amount in excess of $5,000 from Joseph Motta without Garret's written consent, as apparently required by ¶ 3 of the Operating Agreement; (3) by "demand[ing] that Garret either agree to split up TLJ's debt and close up operations, or sign over the company to Bergin, which was not a contractual provision available under the Operating Agreement," Mot. at 9; and (4) by failing to give 60 days' notice of his intent to withdraw from the company, as required under ¶ 8 of the Operating Agreement. Bergin opposes summary judgment in Plaintiffs' favor on any of these claims, as discussed below.

*1. TLJ's Breach of Contract Claim Is Dismissed*

Bergin argues that Plaintiff TLJ was not a party to the Operating Agreement, and therefore cannot maintain an action to enforce it. Plaintiffs make no attempt to oppose this argument or to

ORDER DENYING MOTION FOR
SUMMARY JUDGMENT
- 5

clarify under what theory or authority TLJ has standing to enforce the contract to which it is not a party, and its breach of contract claim is therefore dismissed.

   2. *Bergin Has Demonstrated That There Is a Genuine Issue of Material Fact Whether Garret Was in Material Breach of Agreement*

Bergin next argues that Garret cannot sue to enforce terms of the Operating Agreement because he, Garret, is himself in material breach of that agreement. *See DC Farms, LLC v. Conagra Foods Lamb Weston, Inc.*, 179 Wash. App. 205, 220 (2014) (citing *Jacks v. Blazer*, 39 Wash.2d 277, 285–86, 235 P.2d 187 (1951))("[A] breach or nonperformance of a promise by one party to a bilateral contract so material as to justify a refusal of the other party to perform a contractual duty, discharges that duty."). Bergin claims that Garret "was not working full time as required by the agreement" and "effectively abandoned the business in early 2016." Bergin's Opp. Br. at 10, citing Bergin Decl., ¶¶ 13-22; Garret Decl., Ex.1 ("The partners shall provide their full-time services and best efforts on behalf of the partnership."). Bergin adds that Garrett "was more often than not unresponsive and nonfunctional (often on drugs) when he was awake. He was suffering from mental illness and substance abuse." Bergin Decl., ¶ 21.

Garret does not deny Bergin's allegations. Instead, he objects to the nature of the evidence Bergin submits in support of allegations about Garret's material breach, arguing the allegations are among other things "hearsay" and lacking foundation, and should be stricken.[3] However, many of the allegations in Bergin's declaration, while vague, conform to the rules of evidence. The allegations are sworn under penalty of perjury in a form expressly authorized by Fed. R. Civ.

---

[3] In what appears to be an attempt to circumvent page limitations (which Garret's Reply already exceeds), the bulk of Garret's evidentiary objections are submitted in the "Supplemental Declaration" of Garret's attorney, Curtis Edmondson. Dkt. No. 53-1. Declarations, according to Fed. R. Civ. P. 56(c), are to "set out facts that would be admissible in evidence," not evidentiary objections or legal argument. The Court considers (and as stated above, rejects) Garret's evidentiary objections, but will not address each of them line by line as they are set out in this improper declaration.

ORDER DENYING MOTION FOR
SUMMARY JUDGMENT
- 6

P. 56(e), and generally may be construed as reflecting Bergin's first-hand knowledge. *See, e.g.,* Bergin Decl., ¶ 13 ("As 2015 wore on, however, Garret started to disengage. He became more recluse, hard to reach, would not help with tasks, and generally appeared over his head on participating."); ¶ 21 ("On business trips I discovered him blacked out drunk and unable to attend meetings. He was no longer responding to communications or helping with the work."); ¶ 22 ("I did make multiple efforts to try to engage with Garret, but he again failed to respond or participate in any meaningful way."). Construing Bergin's testimony in a light most favorable to him, the non-moving party, the Court concludes that Bergin has raised an issue of fact as to whether Garret was in material breach of the Operating Agreement, which would be a defense to any breach of contract claim.

### 3. Plaintiffs' Motion Fails to Demonstrate Absence of Factual Disputes

Disputes of fact also preclude summary judgment on specific elements of Garret's breach of contract claim as well. Garret claims that Bergin started Materia Group, a "competing" company, presumably in violation of the Operating Agreement's non-compete clause. That clause prohibits a party from "engag[ing] in a business which is or which would be competitive with the existing or then anticipated business of [TLJ] for a period of 30 DAYS" after retiring from TLJ. Garret Decl., Ex. 2, ¶ 9.  Bergin argues that TLJ was not engaged in *any* "existing" or "anticipated" business by mid-July, when he started Materia Group, but was by then essentially a "dead entity." Bergin Decl., ¶¶ 24-25. And he claims that Materia did not engage in "any business" for the first five months of its existence, well after the 30-day limitation had expired. Covenants not to compete must be construed narrowly, and Bergin has easily raised issues of fact as to whether starting the Materia company constituted a breach of the Operating Agreement's non-compete clause. *See Perry v. Moran*, 109 Wn. 2d 691, 706 (1989).

ORDER DENYING MOTION FOR
SUMMARY JUDGMENT
- 7

*4. Garret's Motion Fails to Satisfy Elements of Breach of Contract Claim*

Finally, the Court declines to grant summary judgment on Garret's various other breach of contract theories, as he has simply failed to lay out the four essential elements of such a claim—duty, breach, causation, and damages—and to explain in what way Bergin's actions support those elements. For example, Garret claims as his primary injury the assignment of TLJ's IP to John Motta, but fails to specify what provision of the Operating Agreement this action breached. *See* Mot. at 10 (stating only that "[t]hese actions were taken in violation of the Operating Agreement.").

As another example, even assuming that in approving the loan from Joseph Motta Bergin breached the provision in the Operating Agreement requiring Garret's signature for any loan over $5,000, it is not clear that the $15,000 loan caused any injury. The loan resulted in an infusion of $15,000 into the company, and it does not appear that the younger Motta has initiated (or plans to initiate) any legal proceedings for repayment. *See* Dep. of Joseph Motta at 162, Decl. of Curtis Edmondson, Ex. 3, Dkt. No. 44-6. And, while the assignment of TLJ's IP might arguably qualify as an injury, it was made in connection with the $5,000 loan from *John* Motta, Joseph's father, which was under the $5,000 threshold in the Operating Agreement clause requiring Bergin to obtain Garret's written permission.

Similarly, it is not clear what injuries might have resulted from any breach of the provision requiring Bergin to give 60 days' written notice for retirement or withdrawal from the company, even assuming that Bergin failed to provide it. And Plaintiffs' motion fails entirely to discuss causation as to any of the breach of contract claims. Having failed to establish all of the necessary elements, Garret is not entitled to summary judgment on his breach of contract claim.

ORDER DENYING MOTION FOR
SUMMARY JUDGMENT
- 8

**C. Claims for Breach of Fiduciary Duty and Breach of Trust/Loyalty**

Plaintiffs also seek summary judgment on Counts II and III: "Breach of Fiduciary Duty," and "Breach of Trust/Loyalty," respectively. In Washington, the "only fiduciary duties that a member . . . has to the limited liability company and its members are the duties of loyalty and care" as follows:

> (1) account[ing] to the limited liability company and hold[ing] as trustee for it any property, profit, or benefit . . .
>
> (2) refrain[ing] from dealing with the limited liability company as or on behalf of a party having an interest adverse to the limited liability company; . . .
>
> (3) refrain[ing] from competing with the limited liability company . . .
>
> (4) refraining from engaging in grossly negligent or reckless conduct, intentional misconduct, or a knowing violation of law.[4]

RCW 25.15.038(1)-(3).

Plaintiffs argue that Bergin breached these duties to them in the following ways: (1) "by entering into a note with John Motta in November 2015, with the ineffective intent to try and transfer assets from TLJ for use by competitor Materia via a 'strawman,'" Mot. at 12-13; (2) by entering into a loan with Joseph Motta, in excess of the $5,000 limit requiring written permission of both members of TLJ; and (3) by assigning ownership of TLJ's intellectual property to John Motta without Garret's knowledge. The sum of Plaintiff's argument on these claimed breaches is that "[t]hese acts were clearly a breach of loyalty and duty of care." Mot. at 13.[5]

---

[4] By the plain language of the statute, these duties are not limited, as Bergin argues, to the winding up of the LLC, but apply to the member's activities "in the conduct *and* winding up of the limited liability company's activities." RCW 25.15.038 (emphasis added).

[5] Plaintiffs do not expressly argue that Bergin's involvement with Materia constituted a breach of fiduciary duty or duty of loyalty/trust. As noted above at § III.B.3, however, even if they had, there remains a dispute of fact as to whether Bergin started a company that would compete with TLJ, or whether TLJ was effectively defunct, and/or whether Bergin had resigned from TLJ at any time Materia may have been construed as competing.

ORDER DENYING MOTION FOR
SUMMARY JUDGMENT
- 9

On a motion for summary judgment, the moving party "bears the initial burden of informing the court of the basis for its motion and of identifying the portions of the declarations (if any), pleadings, and discovery that demonstrate an absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). On their claims for breach of fiduciary duty and duty of loyalty, the Plaintiffs have failed to meet this threshold burden in their motion. First, Plaintiffs fail to tie any of their factual allegations to any of the specifically enumerated duties articulated in the statute. Furthermore, as to their first theory, Plaintiffs have submitted no evidence whatsoever that Bergin entered into the loan obligation with John Motta with anything other than an intent to benefit TLJ; the characterizations of Motta as a "strawman" and the transaction as a "sham," at this stage at least, are pure speculation.

Plaintiffs' second theory regarding Counts II and III suffers from the same deficiency as the one outlined above, § III.B.4.; Plaintiffs have failed to allege any damages that may have resulted from the $15,000 loan from Joseph Motta. Because Motta has indicated he has no intention of demanding repayment on the loan, if anything, the evidence suggests that it represents a $15,000 windfall to TLJ. Moreover, for breach of fiduciary duty claims based on either of the Motta loans, both made in November 2015, it appears (although neither party has addressed the question) that the statute of limitations may have run before Plaintiffs filed their Complaint on July 20, 2019. RCW 4.16.080.

As to their third theory, Plaintiffs argue that Bergin breached his fiduciary duty and duty of loyalty and trust by "assigning the rights to the creative assets owned by TLJ, without any knowledge of the majority stakeholder in the business [Garret] and without any pressure that the $5,000 Note was going to be foreclosed upon." Mot. at 13. Bergin has claimed, however, that assignment of TLJ's IP to John Motta was in satisfaction of the $5,000 debt. Consistent with this

ORDER DENYING MOTION FOR
SUMMARY JUDGMENT
- 10

claim, the evidence demonstrates that the loan was past due, and TLJ had no other assets with which to pay it. Garret does not allege that the IP was worth some amount disproportionate to the debt it satisfied. There is simply no evidence presented that this transaction was the result of "fraud, dishonesty, or incompetence," and under the business judgment rule, "corporate management is immunized from liability in a corporate transaction where (1) the decision to undertake the transaction is within the power of the corporation and the authority of management, and (2) there is a reasonable basis to indicate that the transaction was made in good faith." *Nelson v. Pryor*, 3 Wash. App. 2d 1007 (2018), citing *Scott v. Trans–Sys., Inc.*, 148 Wn.2d 701, 709 (2003). None of the allegations made in Plaintiffs' motion indicate Bergin's actions were anything other than an appropriate exercise of his business judgment.

**D. Damages**

In the absence of a ruling on liability, the Court declines to reach Plaintiffs' motion as it relates to Plaintiffs' $3 million damages claim.

**E. Defendant Bergin's Cross-Motion for Summary Judgment**

Finally, in his opposition to Plaintiffs' motion, Bergin submits a cross-motion seeking dismissal of the breach of contract, breach of fiduciary duty, and breach of loyalty and trust claims. While his arguments may indeed have merit, Bergin presents only the sparest factual allegations and minimal legal argument that he is entitled to judgment as a matter of law, and thus, like Plaintiffs, has also failed to meet his initial burden of production for summary judgment. Therefore, other than as stated above regarding dismissal of TLJ's breach of contract claim, the Court denies Bergin's motion for cross summary judgment.

///
///

ORDER DENYING MOTION FOR
SUMMARY JUDGMENT
- 11

### IV.  CONCLUSION

For the foregoing reasons, the Court DENIES Plaintiffs' Motion for Partial Summary Judgment; and GRANTS in part Defendant Bergin's Cross-Motion for Summary Judgment, dismissing Plaintiff TLJ's breach of contract claim.

DATED this 25th day of February, 2021.

*Barbara J. Rothstein*
Barbara Jacobs Rothstein
U.S. District Court Judge

ORDER DENYING MOTION FOR
SUMMARY JUDGMENT
- 12